# PRACTICE REPORTS.

## COURT OF APPEALS.

CHARLES F. CLAFLIN, ALBERT S. WARD and WALTER H. TAYLOR agt. THE FARMERS' AND CITIZENS' BANK OF LONG ISLAND.

A *bank check* drawn by the president of the bank in his individual name, payable to another person, and certified "*good*" by the drawer *as president,* renders the acceptance *void* in the hands of the drawer, irrespective of the question whether or not he has funds in the bank.

The want of authority in the president as agent, to bind the bank, appears upon the *face of the check;* of course there can be no *bona fide holder* of the check.

And it does not alter the case that a general authority to certify checks had been conferred by the bank on the president. The question is one of agency, where the president cannot act as the agent of both parties to the contract, nor as agent in regard to a contract in which he has any interest, or to which he is a party, on the opposite side to his principal.

*September Term,* 1862.

THIS action was commenced on the 20th day of January, 1855, by the above named plaintiffs, to recover from the above named defendants the amount of three checks or drafts drawn on the defendants' bank, and alleged to have been certified and accepted by the bank through C. W. Houghton, its president.

A copy of the summons and complaint was served on the said 20th day of January, and a copy of the defendants' answer, on the 8th day of February, in the same year. At a circuit court held in the city of New York on the 6th day of May, 1856, by Justice DAVIES, the action was referred to E. P. Cowles, Esq., to hear and determine all the

issues therein—the defendants' attorney, S. L. Griffin, Esq., then being absent from said court.

On the 28th day of May, 1857, John M. Martin was substituted attorney for the defendants in the place of Mr. Griffin.

The trial before the referee was commenced on the 28th day of February, 1857, and the testimony was closed on the 28th of August, 1858. On the 26th day of November, in the same year, the referee reported that the plaintiffs were entitled to judgment against the defendants for $26,-224, with costs ; and on the 20th day of December next following, judgment against the defendants was entered on his report for that amount and $907.71 costs, making in all the sum of $27,131.71.

The pleadings are as follows :

Plaintiffs complain of the defendants, and aver that the defendants are a corporation created by and under the statutes of the state of New York, and transacting business at Williamsburgh, in the county of Kings, in said state.

That at the dates of the several instruments hereinafter mentioned, one Charles W. Houghton was the president of the said bank, and as such had power and authority to accept drafts and certify checks drawn upon the said bank, and to bind the said bank thereby.

That on or about the 31st day of December, 1853, one Thomas Green drew his draft or check in the words following :

"No. . . . Williamsburgh, Dec. 31, 1853. Farmers' & Citizens' Bank of Long Island. Pay to the order of W. A. Cleaveland five thousand dollars. $5,000. Thos. Green."
[" Good. C. W. Houghton, Pres."]

And then and there delivered the same to the payee thereof. That said draft or check was presented to said defendants, and that said defendants by their said president accepted the said instrument in writing; and said Charles W. Houghton, so acting as said president, then and

there in writing on the face of said check or draft, certified the same in the words following: " Good. C. W. Houghton, Pres."

That said check or draft was indorsed by said payee, and so indorsed, accepted and certified was by him transferred and delivered to the plaintiffs. That the said draft or check was presented to defendants for payment, who then and there refused to pay the same, and that the same remains wholly unpaid.

And for a second cause of action the plaintiffs allege that one C. W. Houghton drew his draft or check in the words and figures following:

" No. . . . Williamsburgh, Feb. 4th, 1854. Farmers' & Citizens' Bank of Long Island. Pay to the order of W. A. Cleaveland fifty-five hundred dollars. $5,500. C. W. Houghton."

[" Good. C. W. Houghton."]

That said defendants by their said president accepted the said instrument in writing, and said Charles W. Houghton acting as such president then, and in writing on the face of said check or draft, certified the same in the said filling. " Good. C. W. Houghton." That said check or draft was indorsed by said payee, and so indorsed, accepted and certified was by him transferred and delivered to the plaintiffs.

That the said draft or check was presented to defendants at their banking-house for payment, who then and there refused to pay the same, and that the same remains wholly unpaid.

And for a third cause of action plaintiffs allege that C. W. Houghton drew his certain draft or check in the words and figures following:

" No. . . . Williamsburgh, Feb. 25th, 1854. Farmers' & Citizens' Bank of Long Island. Pay to the order of W. A. Cleaveland, Esq,, ten thousand dollars. $10,000. C. W. Houghton."

[" Good. C. W. Houghton, Pres."]

That said defendants by their said president accepted the said instrument in writing, and said Charles W. Houghton acting as said president then and there in writing on the face of said check or draft, certified the same in the said filling : " Good.    C. W. Houghton."

That said check or draft was indorsed, accepted and certified, was by him transferred and delivered to the plaintiffs. That the said check or draft was presented to defendants at their banking-house for payment, who then and there refused to pay the same, and that the same remains wholly unpaid.

Plaintiffs aver that said checks are wholly unpaid.

Wherefore plaintiffs demand judgment against defendants for twenty thousand and five hundred dollars, and interest from December 31st, 1853, on five thousand dollars ; and from the 4th of February, 1854, on five thousand five hundred dollars ; and from February 25, 1854, on ten thousand dollars, besides costs.

The defendants, by Sidney L. Griffin, their attorney, answering the complaint in the above entitled action, deny that at the dates of the several alleged instruments mentioned in said complaint, one Charles W. Houghton was the president of said bank, and as such had power and authority to accept drafts or certify checks upon said bank, or to bind the said bank thereby, as alleged in said complaint.

And said defendants also deny that the alleged check first mentioned and described in said complaint, was then and there delivered to the payee thereof, or that it was presented to said defendants, or that said defendants by their said president accepted said instrument in writing ; or that said check or draft was indorsed by said payee, or was by him transferred or delivered to the plaintiffs ; or that said draft or check was presented to the defendants for payment ; or that the same remains unpaid, as particularly set forth in said complaint.

And said defendants also deny that said defendants, by

their alleged president, accepted the alleged instrument in writing, mentioned and set forth for a second cause of action in said complaint, or that said Charles W. Houghton, acting as such president, there and in writing certified the same as set forth in said complaint, or that said check or draft was indorsed by the payee, or was by him transferred or delivered to the plaintiffs; or that the said alleged draft or check was presented to defendants at their banking-house for payment; or that the same remains unpaid as particularly set forth in said complaint.

And said defendants also deny that said defendants, by their alleged president, accepted the alleged instrument in writing, mentioned and set forth for a third cause of action in said complaint; or that said Charles W. Houghton acting as such alleged president, then or there in writing certified the same as set forth in said complaint; or that said check or draft was indorsed by the said payee, or was by him transferred or delivered to the plaintiffs; or that said draft or check was presented to defendants at their bank ing-house for payment; or that the same remains unpaid as particularly set forth in said complaint.

And for further answer to said complaint said defendants say that the several drafts or checks mentioned and described in said complaint, were drawn or made; and if certified, as set forth in said complaint, were certified at the office of the Long Island Water Works Company, Nos. 45 and 46 Merchants' Exchange, in the city of New York, and not at the banking-house of defendants, without authority, and when neither said Thomas Green or said Charles W. Houghton had money or funds on deposit in said Farmers' and Citizens' Bank, to enable said bank or said defendants to pay the said drafts or checks or either of them. And that the defendants or said bank were never informed in any manner by said plaintiffs or said Cleaveland, or by any other person, that said several alleged drafts or checks were drawn or certified, as alleged in said complaint, until

about the time of the commencement of this action; nor that said alleged drafts or checks were held or claimed in any manner by said plaintiffs until the service of said complaint and summons in this action on the defendants.

And for further answer to said complaint said defendants say that the amount of the alleged draft or check first mentioned and described in said complaint, was paid said Cleaveland in full by said Thomas Green, as these defendants are informed and believe, shortly after the drawing of said draft or check by said Green to said Cleaveland, to wit: before the alleged transfer and delivery of said draft or check to said plaintiffs, and at the time of said payment and oftentimes since, said Cleaveland promised to return said draft or check to said Green, but excused himself for not doing so by alleging that said check was in his box at his residence in Brooklyn.

And for further answer to said complaint said defendants say that the several amounts of the alleged drafts or checks mentioned and described in the second and third causes of action in said complaint, were severally paid said Cleaveland in full by said Charles W. Houghton, as these defendants are also informed and believe, shortly after the alleged drawing of said several drafts or checks by said Houghton, to said Cleaveland, to wit: before the alleged transfer and delivery of said drafts, checks, or either of them, to said plaintiffs, and at the several times of said payments and oftentimes since, said Cleaveland promised to return said drafts or checks to said Houghton, but excused himself for not doing so by alleging that said check or checks were in his box at Brooklyn.

And for further answer to said complaint said defendants say that each and all of the alleged drafts or checks mentioned and described in said complaint was or were transferred and delivered by said Cleaveland to said plaintiffs, if the same or either of them was or were transferred or delivered to said plaintiffs without consideration and

for the accommodation of said Cleaveland, and said checks and each of them were, as the defendants are informed and believe, drawn and delivered respectively by said Green and Houghton to said Cleaveland, usuriously and in contravention of the statutes of the state of New York, against usury, and a sum greater than seven per cent. was agreed on and reserved for the money advanced respectively on said drafts or checks, to wit: one-eighth of one per cent. a day, to wit: nine thousand dollars, to wit: $45\frac{5}{9}$ per cent. per annum, and the same was accepted and received by said Cleaveland, and he never had any other or different title to said drats or checks or either of them.

At a circuit court held at the city hall in the city of New York, on the sixth day of May, 1856—in open court— present, Hon. HENRY E. DAVIES, Justice.

This cause having been called in its regular order on the calendar for trial, on motion of Burrill, Davison & Burrill, plaintiffs' attorneys, no one appearing in opposition thereto, ordered that the above action and all the issues therein be, and the same are hereby referred to E. P. Cowles, Esq., counsellor at law, of the city of New York, as sole referee, to hear and determine the same.

To the court: The undersigned referee reports as follows:

I have been attended by the counsel for the respective parties, and have heard their proofs and allegations, and the arguments of counsel, and find as matter of fact the following:

*First.*—That the three checks set forth in the complaint were drawn by the respective drawers thereof on the days of their several dates, and severally accepted and certified, indorsed and delivered, as therein alleged.

*Second.*—That the said checks at the times they were respectively drawn and delivered to the payee therein named, were so accepted and certified by C. W. Houghton, as president of the said bank; and he at the time of such

acceptance and certification was the president of the defendants' bank, and as such president authorized by such bank to certify checks drawn upon said bank; such checks were so certified by said Houghton at his business office in the city of New York; but of such fact the plaintiffs when they received the same and paid the money thereupon, had no notice.

*Third.*—The said checks so certified were each of them on the several days they respectively bear date, delivered to the payee thereof; who upon receiving them paid to the respective drawers of them upon the same days, the full amount of the face of each check.

*Fourth.*—The payee of such checks, on the same day of the respective dates of them, respectively indorsed and transferred the same and each of them to the plaintiffs; and the plaintiffs when they received the said checks respectively, paid to the payee thereof the full amount of the face of each check, and that the said plaintiffs so received the said checks in good faith.

*Fifth.*—The plaintiffs have, ever since the said checks were severally passed to them as aforesaid, been the actual holders of them and each of them.

*Sixth.*—On or before the first day of December, 1854, the plaintiffs presented the said checks to the defendants at their bank for payment, and payment thereof was demanded and refused.

*Seventh.*—The amount of such checks with interest thereon from the 1st day of December, 1854, is as follows:

Principal, - - - - - $20,500
Interest to date, - - - - 5,724

$26,224

Upon these facts I determine as matter of law, that the defendants are liable upon such checks, by reason of such certification of them by the president of such bank.

*Second.*—The plaintiffs are entitled to judgment for

twenty-six thousand two hundred and twenty-four dollars, ($26,224,) with costs.

All of which is respectfully submitted.

EDWARD P. COWLES, *Referee.*

The following is the opinion of the referee :

The drawers of the three several checks in question, Green and Houghton, received from the payee, Cleaveland, on the day of the dates of the checks respectively, the full amount of the face of them, and each of them. They were, therefore, valid securities in the hands of Cleaveland, the payee. Upon this point there is no dispute. If Cleaveland passed them on the days they respectively bear date, to the plaintiffs, for full value, then it is quite immaterial whether Green and Houghton subsequently paid Cleaveland or not ; since, if plaintiffs, not Cleaveland, were at the time of such alleged payment, the actual holders of them, the payment to Cleaveland without the production by him of the check, would not operate to discharge the securities. Upon a careful analysis of the whole testimony, I must find, as a matter of fact, that plaintiffs became, on the days of the drawing of the several checks, the *bona fide* holders of them from Cleaveland for full value.

If the testimony of Cleaveland upon the question of plaintiffs' title to the checks is entirely discredited, even then there remains the positive testimony of the plaintiff Ward, supported in part at least by the checks given by the plaintiffs to Cleaveland on the 31st of December, 1853, and 4th of February, 1854. The circumstance which, unexplained, would tend to cast suspicion upon Ward's testimony, would be mainly the long holding of these checks by the plaintiffs without presentation to the bank. When Ward was on the stand, plaintiffs offered to prove by him the reason why plaintiffs held the papers so long without presentation. To this the defendants objected, and the referee improperly, as he now thinks, excluded the testimony so offered.

Now, while it is true that the protracted holding of these

checks by plaintiffs, without presentation, would, unexplained, be a circumstance of the grossest suspicion as respects to good faith of their title, yet it is not competent for the defendants to urge such objection, and at the same time refuse to hear the proffered explanation.

The explanation offered was ruled out on defendants' motion, and the absence of it must not now be invoked to impeach the plaintiffs' title.

If, therefore, the case depended on Ward's testimony alone, uncorroborated by Cleaveland, the finding must necessarily be in favor of plaintiffs. But it is proper to remark further, that upon the whole testimony, Cleaveland seems to be sustained by the weight of the evidence.

It is not pretended by either Green or Houghton, that they ever saw the checks in Cleaveland's hands after their respective dates; and while it is not impossible, it is yet out of the ordinary course of things for parties to pay outstanding paper without its production and cancelation.

Green certainly does not give any very satisfactory account of his alleged payment to Cleaveland; he produces neither memorandum or vouchers for it. Houghton produces no voucher for the payment of the precise amount of his two checks.

While, by the account of moneys received from and paid to Cleaveland, which he, Houghton, says is in Cleaveland's handwriting, there was a large balance due to Cleaveland, both on the 13th and 27th of February, (the days on which Houghton says his two checks in suit were paid,) over and above the payment he made on each of these occasions. In the absence of express proof of any order for the direct application of these payments to these checks, the inference of the law, from the state of the accounts as shown by such statement, would be, that those payments were on general account. It is not singular that Cleaveland should have put both of these checks, those in suit, into his account with Houghton, being, as he was, indorser upon both of

them, as such liable to the holder. Again : taking into consideration the large pecuniary transactions which had taken place between Cleaveland and Houghton, the amount and varied character of the securities which Cleaveland had held at different times against Houghton, the testimony of the witnesses other than Houghton, to the conversations about securities which Houghton claimed should be surrendered to him by Cleaveland, is of little value as contradicting Cleaveland, or as tending to show that such conversations had reference to these two checks. None of these witnesses were pecuniarily interested in the discussion. None of them knew particularly the details of the business then under discussion. None of them heard all that passed between Houghton and Cleaveland. Some years have elapsed since those conversations, and there is too much indefiniteness and vagueness in this testimony to render it of any great value as impeaching Cleaveland or supporting Houghton. To these considerations must also be added the testimony of Ward, which, if credited, tends to support Cleaveland. I cannot, therefore, regard Cleaveland's integrity as having been successfully assailed.

If I am right in holding the plaintiffs to be *bona fide* holders of the checks, the only remaining question is as to the liability of the bank upon Houghton's certificate. Upon this question I can entertain no doubt.

The by-laws of the bank, in restricting the power of certifying checks to certain specified officers, of which the president was one, have thereby conferred such power upon those officers in direct terms, or in what is legally tantamount thereto.

A check is a bill of exchange.

The certificate of a check by the proper bank officer as " good," is, in all its legal effects, the same as an acceptance of the bill, and binds the bank to its payment. Whether Cleaveland, knowing that such certificate had been given at a place other than that of the bank parlor

Claflin agt. Farmers' & Citizens' Bank of Long Island.

or counter, could hold the bank on the certificate of the president, it is unnecessary to discuss, for no such knowledge is brought home to the plaintiffs.

The report must be for the plaintiffs. Interest cannot be allowed further than from the date of the demand of payment. Ward supposes, although he cannot know, that his partner, Claflin, made the demand some time in June, 1854. There is no certain proof that the demand was earlier than the fall of 1854. The date of the demand being late in the fall, though not fixed with entire certainty, I shall adopt the first of December, 1854, as the date from which to charge interest, although the demand was probably in fact somewhat earlier than that. The report will therefore be as follows :

| | | | | | |
|---|---|---|---|---|---|
| Principal of checks—1st, | - | - | - | | $5,000 |
| "         "    2d, | - | - | - | - | 5,500 |
| "         "    3d, | - | - | - | | 10,000 |
| | | | | | $20,500 |
| Interest from Dec. 1st, 1854 to date of report, | | | | | 5,724 |
| | | | | | $26,224 |

EDWARD P. COWLES, *Referee.*

*Dated November 26th, 1858.*

From the judgment entered on the report of the referee, the defendants appealed to the general term of the supreme court, on a case containing exceptions.

WILLIAM C. NOYES and JOHN M. MARTIN, *for appel'ts.*
CHARLES O'CONOR and JOHN E. BURRILL, *for resp'ts.*

By the court, LEONARD, Justice. An agent cannot, in general, act so as to bind his principal in matters touching his agency, where he has an adverse interest in himself. (*Stone* agt. *Hays,* 5 *Denio,* 575 ; *Bentley* agt. *The Columbia Ins. Co.,* 17 *N. Y. R.,* 423.)

There is an exception in the application of this principle

in favor of the holders of negotiable paper acquired in good faith before due, for value, without notice of the misconduct of the agent, or the knowledge of such facts as would amount to a want of good faith in the taker of such paper.

In the case before us, the interest of Houghton is assumed to be at variance with his duty. His interest was an inducement to him to certify his own checks without funds. It was his duty not to do it. The public, however, cannot be apprised, from the face of the checks, of the existence of this conflict between interest and duty. The president of the bank may have money there on deposit as well as another man. The money being in bank, the certification of his own check would not be adverse to the duty of the president. As between the bank and its own officer, it is entirely clear that such a certification would create no liability.

The general authority to certify checks had been conferred by the bank on their president. The identity between the name of the drawer and the president of the bank who certified the check, did not necessarily inform any one, by the mere force of that fact, that the drawer had certified his own checks without funds in the bank. It was possible that he had so done. It was not probable, however; and the usual presumptions of innocence and fair dealing were against the existence of doubts about the conduct of the president of the bank.

The presumption of bad faith on the part of the plaintiffs does not necessarily arise from the manner of certification. That fact, with other circumstances, might have brought the referee or a jury to the conclusion that here was a want of good faith on the part of the plaintiffs in taking the checks; but the certification in the manner mentioned was not conclusive, as evidence, to deprive the plaintiffs of the protection afforded to *bona fide* holders of negotiable paper. (20 *How. U. S. R.*, 345; *Story on Bills*, § 194; 34 *Eng. L. & Eq.*, 131.)

The legal principles respecting the subject of agency as applicable to the certification of checks, their character and negotiability, and the protection to which *bona fide* holders thereof are entitled, are fully considered by the court of appeals in the *Farmers' & Mechanics' Bank of Kent County* agt. *The Butchers' & Drovers' Bank*, (*reported* 14 *N. Y. R.*, 634, *and* 16 *id.*, 125,) and are controlling as far as they are applicable in the case now before the court.

We agree with the referee, that the defendants cannot now urge any reasons against a recovery arising from the delay occurring before the checks were presented for payment, after having by objections at the trial prevented the explanations offered by the plaintiffs in that respect.*

The several objections taken during the progress of the trial to the admission or exclusion of evidence, &c., so far as they were urged at the argument, have been examined, but none of them are considered well taken, and do not seem to require an extended review.

Judgment is affirmed, with costs.

From this judgment the defendants brought an appeal to this court, and also asked leave of the court to review two intermediate orders of affirmance of the supreme court, which it was claimed necessarily affected the judgment.

JOHN M. MARTIN and WM. CURTIS NOYES, *for appel'ts.*
JOHN E. BURRILL and CHARLES O'CONOR, *for resp'ts.*

By the court, SELDEN, J.   The only question in this case which seems to me to require serious consideration, is, whether Mr. Houghton could bind the bank by accepting

---

*NOTE.—It appears from the case, that after this ruling by the referee, he remarked to the counsel on both sides, that he thought upon reflection, that such ruling was erroneous; but the defendants' counsel did not withdraw his objection, nor did plaintiffs' counsel put, or offer further to put the question, and the case proceeded without any change of the referee's minutes. Now, it is a settled doctrine, that where evidence is ruled out, and the judge afterwards allows counsel an opportunity to introduce it, which he declines, error does not lie for the ruling out. (*D'Homergue* agt. *Morgan*, 3 *Whart.*, 26.)

checks or drafts drawn by himself. It is a well settled rule of the law of agency, to which I apprehend there is no exception, that no person can act as the agent of both parties to a contract, although he may himself have no interest on either side; nor can he act as agent in regard to a contract in which he has any interest, or to which he is a party, on the side opposite to his principal. In the present case, Mr. Houghton, as the drawer of the checks, was the party with whom the contract of acceptance was primarily made, and stood therefore precisely in those opposite relations which the rule referred to forbids. It is not necessary for the principal in such cases to show that the agent has acted unfairly, or that he himself has sustained any injury. The act of the agent is deemed to be unauthorized, and the contract is void.

It is conceded, in the opinion of the supreme court in this case, that as between the bank and Mr. Houghton, the certificate of acceptance of the latter would not be obligatory. But that court supposed that a subsequent *bona fide* holder could nevertheless avail himself of such certificate. The difficulty in the way of this conclusion, however, is, that the want of authority in Mr. Houghton to bind the bank appeared upon the face of the check. There could be no *bona fide* holder of such an instrument. An indorser of commercial paper may, it is true, very frequently acquire rights superior to those of the original party; but never, so far as I am aware, when he has notice of the defect. If he knows the facts which would render the paper void in the hands of the party from whom he derives title, he can not recover.

The supreme court seems to have supposed that to prevent the plaintiffs from being considered as *bona fide* holders, they must have known that the drawer had no funds in the bank to meet the check. This was clearly an error. The acceptance was void in the hands of the drawer, irrespective of the question whether he had or had not such

funds.   The double relation in which Mr. Houghton stood alone rendered it void, and of this the plaintiffs were apprised by the check.   It could not be necessary that they should have had notice of any other fact in order to defeat their recovery, as the same facts which render commercial paper void in the hands of the original party, will equally avoid it in the hands of any subsequent holder having notice of such facts.

It is of no importance that the referee has found as a fact that the plaintiffs were *bona fide* holders.   This finding is opposed by the plain law of the case, and is therefore nugatory.   This reasoning applies to two only of the checks upon which the action is brought.   I see no obstacle to a recovery upon the check drawn by Green.

The judgment of the supreme court should be reversed, and there should be a new trial ordered, with costs of the two appeals to be paid by the plaintiffs, the residue of the costs to abide the result of the new trial.

————— ✦ —————

## NEW YORK SUPERIOR COURT.

### GEORGE WILLIAMS agt. JOHN O'KEEFE and another.

A *corporation ordinance* forbidding a greater rate of speed than that fixed as legal therein, for vehicles in the city of New York, is competent and proper *evidence* in an action for damages caused by being run over by a vehicle in such streets, to show that the plaintiff was free from negligence, though it furnishes no evidence of negligence in fact on the part of the defendants.

A citizen of the city of New York is presumed to know of the existence of its ordinances and their provisions, and has a right on the presumption that they will be obeyed.   The law of negligence discussed by MONELL, J.

Unless proof of negligence on the part of the plaintiff is so strong that the court would set aside a verdict in his favor as against the weight of evidence, it is not proper to take that question from the jury.

*General Term, October,* 1862.

BOSWORTH, *Ch. J.,* MONCRIEF, ROBERTSON, BARBOUR and MONELL, *Justices.*

APPEAL from a judgment.   Case was tried by a jury.