CHAUNCEY S. TITUS, Respondent, *v.* THE PRESIDENT, DIRECTORS AND FIRST COMPANY OF THE GREAT WESTERN TURNPIKE ROAD, Appellant.

Where the by-laws of a corporation, lawfully adopted in pursuance of its charter, authorize and require its certificates of stock to be issued under the corporate seal and signed by its president and treasurer, in the absence of any express provision or exception, no other or different form of certificate is required in the case of stock owned by one of the officers named; but they are authorized to issue certificates to themselves in the same manner as to other stockholders.

Accordingly, *held*, where the treasurer of such a corporation, upon the faith and pledge as collateral of spurious certificates, drawn up and executed in the form and manner prescribed by the by-laws (the signature of the president having been negligently affixed), purporting on

their face to be of stock owned by the treasurer, obtained a loan of one acting in good faith and in ignorance of the fraud, that there was nothing upon the face of the certificates to notify the lender of any defect in the title; and that the corporation was liable to him for the damages.

*Claflin* v. *F. and C. Bank* (25 N. Y., 293) distinguished.

(Argued May 26, 1874; decided September term, 1874.)

Appeal from order of the General Term of the Supreme Court in the third judicial department on the reversal of a judgment in favor of the defendant on the report of a referee, and granting a new trial. (Reported below, 5 Lans., 250.)

This action was brought to recover damages for negligent and fraudulent acts of the defendant's president and treasurer, in issuing spurious certificates of the stock of the company, on the faith and security of which the plaintiff loaned money to the party holding them.

The referee, in his report, found as facts: First, that on or about December 19th, 1870, John C. McClure, treasurer of the defendant, presented to the plaintiff two certificates of the defendant's stock, signed by Jacob H. Ten Eyck, as president, and by John C. McClure, as treasurer, and having the seal of the company attached, each of which certificates certified that John C. McClure was the owner of 500 shares in the stock of the defendant; and upon the credit of those certificates, which were offered as collateral security to the note of said McClure, dated on that day, and payable two days after date, with interest, he obtained from the plaintiff the sum of $1,855; the plaintiff, at the time of receiving said certificates, knowing that the said John C. McClure, mentioned in the body of said certificates, was the same person who signed the same as treasurer.

Second. That said certificates were drawn up in the form prescribed by the by-laws of the defendant, and were signed by the two officers of the company, both of whom were directed and required, by a general resolution of the defendant, to sign certificates of the defendant's stock, in cases where stock was transferred on defendant's books.

Third. That by the defendant's by-laws, it was required that no such certificate of transfer of stock should be issued unless upon the return of the certificate which had been previously issued for the stock so transferred.

Fourth. That at the time these certificates were made out and issued no certificate of the defendant's stock was returned to the defendant, and the stock, which these certificates purported to represent, had no existence, the whole stock of the company being at that time represented by outstanding certificates.

Fifth. That the defendant had no knowledge of the issuing of these certificates, and the same were issued fraudulently by its treasurer, J. C. McClure, who had no authority from the defendant to issue them.

Sixth. That the value of 1,000 shares of the defendant's stock, December 19th, 1870, exceeded the amount advanced by the plaintiff as aforesaid.

He thereupon found as matter of law :

1. That the general power given to the treasurer of the defendant to sign certificates of stock did not authorize him to sign certificates in his own name or favor.

2. That no recovery could be had in this action by the plaintiff against the defendant, as such defect appeared upon the face of the certificate, and he had notice of it at the time he took them.

3. That the defendant was entitled to judgment, and that the complaint herein be dismissed with costs.

After the finding of the above facts and conclusions of law, the referee further found, on the settlement of the case, on the request of the plaintiff's counsel, the following additional facts, viz. :

1st. That the said John C. McClure delivered to the plaintiff, indorsed upon the said two certificates as part of the security for the loan, an assignment of the certificates and the shares of stock mentioned therein, and a power of attorney to make a transfer thereof on the books of the company, in blank, signed by said John C. McClure.

2d. That when the plaintiff took the scrip from said McClure, as found in his report, the plaintiff had not any knowledge or suspicion that it did not represent stock of the company, and thought they were genuine and good certificates of stock.

3d. That there was no by-law of the defendant making any exception as to the form of the certificate of stock, or as to the officers who were to sign it, when issued to the treasurer or the president of the company.

4th. That it was an act of negligence in Jacob H. Ten Eyck, the president of the company, to sign the said false certificates of stock, on which the advance was made by the plaintiff, as such president.

5th. That the seal on said certificates was the seal of the company, and the signature was the genuine signature of Ten Eyck, and that the loan was made by the plaintiff in the belief that the seal and signature of Ten Eyck were genuine.

6th. That the loan was made on the faith and credit of the seal and signature of Ten Eyck, as well as of the signature of McClure.

7th. That the plaintiff has sustained loss, by means of the transaction in question, to the amount of the money advanced on the certificates, with interest.

It was not stated in the judgment of reversal, by the General Term, that it was on questions of fact.

*Paul F. Cooper* for the appellant. The fact that the certificates were signed by McClure certifying in his own favor, was notice to plaintiff that the certification was unauthorized. (*Claflin* v. *F. and C. Bk.*, 25 N. Y., 293; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 30, 64.) That the seal and Ten Eyck's signature were to the certificates does not aid plaintiff. (16 Wis., 629–632.) It is not important, in this case, to charge plaintiff with notice of the non-existence of the stock mentioned in the certificates. (*Baker* v. *Bliss*, 39 N. Y., 70; *Williamson* v. *Brown*, 15 id., 354; *Belmont Bk.* v: *Hoge*, 35 id., 65; *Magee* v. *Badger*, 34 id., 247.)

*Amasa J. Parker* for the respondent. This action was clearly maintainable. (*N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; *Bruff* v. *Mali*, 36 id., 205.) It was the issuing of the certificate by defendant, not by McClure personally, which constituted the wrong. (*Bradley* v. *Richardson*, 2 Blatch., 343; 34 N. Y., 64.) Defendant having prescribed the form of its certificates, could not make them in any other form. (*N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 61.) The court will judicially take notice of the ordinary course of banking business. (1 Wait's Dig., 630; 28 N. Y., 425; 26 How. Pr., 1, 2; 34 N. Y., 64.) There was not notice to plaintiff of the falsity of the certificate, and nothing short of notice of that precise fact can import bad faith and constitute a defence. (*Goodman* v. *Simmonds*, 2 How. [U. S.], 343.) It would be no defence that there was a circumstance of suspicion. (*Belmont* v. *Hoge*, 35 N. Y., 65; *Williams* v. *Tilt*, 36 id., 319; *Welch* v. *Sage*, 47 id., 143; *Magee* v. *Badger*, 34 id., 247, 249; *Murray* v. *Lardner*, 2 Wall., 119–121; *Goodman* v. *Simonds*, 20 How. [U. S.], 343.) Certificates of stock assigned in blank pass by delivery like commercial paper, and like bonds payable to bearer, and belong to that class. (*Leavitt* v. *Fisher*, 4 Duer, 1; *Fulman* v. *Sebach*, 1 id., 354; *Murray* v. *Lardner*, 2 Wall., 110; *McNeil* v. *Tenth Nat. Bk.*, 46 N. Y., 325; 34 id., 64.)

Lott, Ch. C. The referee placed his decision against the plaintiff's recovery on the ground that the general power given to the treasurer of the defendant to sign certificates of stock did not authorize him to sign those in his own name or favor, and that as such defect appeared on the face of the certificates, upon the credit of which the plaintiff advanced his money, he had notice of it when he took them, and therefore he could not recover. This the General Term held to be erroneous, and I think properly. The defendant was incorporated by an act of the legislature of this State (chapter 30), passed 15th March, 1799. By reference to its provisions it appears that its business was to be managed by thirteen directors to be

chosen by and from its stockholders, and that such directors were to elect one of their own number as its president. Seven of them were necessary to constitute a quorum, of which the president, except in case of necessary absence, was required to be one. They were authorized to make by-laws, rules, orders and regulations, not inconsistent with the laws of this State or of the United States, as they might deem necessary for the well-ordering and management of the affairs of the corporation. The shares of its stock were declared to be personal estate, transferable on its books. In pursuance of the authority thus given, the directors, as found by the referee, passed certain by-laws, by which they prescribed the form of certificates to be given for the stock of the defendant to the owners thereof, which, under a general resolution of the directors, were to be signed by its president and treasurer. It appears, by the case, that the form of the certificate was prescribed as early as September, 1806, and that it required the signature of the president and treasurer thereto, and that the seal of the corporation should also be affixed to it. It is found by the referee that there was no by-law of the defendant making any exception as to the form of the certificate, or as to the officers who were to sign it when issued to its treasurer or president. It will thus be seen that the directors of the defendant, with knowledge that the act of the legislature incorporating it required its president to be a stockholder, nevertheless authorized and required him to sign every certificate of stock that was to be issued. Such certificate is the only evidence which a stockholder receives of the ownership and title to the stock held by him, and if the decision of the referee was right it would follow that there was no authority conferred on any person to give to the president any certificate showing that he was the holder of the stock standing in his name on the books of the company, and consequently that he could not hold any evidence of his title thereto. There is nothing disclosed by the report of the referee that there was any intention of the directors to prohibit the issue of a certificate to him in the form pre-

scribed by them; nor was there any reason or necessity why such an exception should have been made, or why it should be implied. The president must be presumed to have been chosen with a conviction and belief that he would honestly and properly discharge the specific duties imposed on him by the by-laws, rules and regulations made by the directors, as well as those which would properly devolve on the principal officer of a turnpike corporation. The regulation prescribed for the issue of certificates did not give the right or authority to him or the treasurer alone to do it, but it required, as above stated, the signature of both of them, and in addition thereto the seal of the defendant, which is the highest evidence of a corporate act. It may, therefore, be properly assumed that, as no spurious or false certificate could be issued except by the act of its president (its confidential officer), it was not deemed necessary to make any exception as to his power or that of the treasurer in giving the usual evidence of the ownership of stock held by either of them, and that it was intended that their certificate should be in the same form and signed by the same officers as that issued to any other stockholder.

There is nothing in the decision in the case of *Claflin* v. *Farmers and Citizens' Bank* (25 N. Y., 293), which decides or declares a principle that the certificates issued in conformity with the by-law or regulation of the defendant, herein above referred to, were invalid because they were signed by the treasurer. In that case the president of a bank, having a general authority to certify checks upon it as good, certified, in his character of president, checks drawn by himself, individually, to be good, and it was held that the certificate was virtually an acceptance of the check by the bank, and that the general authority to certify the checks of its dealers did not authorize him to declare his own to be good, and thereby charge the bank with the amount thereof. It was well said by PARKER, J., in giving the opinion of the General Term on the reversal of the referee's decision in the present case (reported in 5 Lansing, 250), that "presumptively, the intention of the

bank in giving the general authority did not include such a case, one out of the ordinary course of business and contrary to business and legal rules, and one entirely unnecessary to the ordinary course and management of the business of the company, * * * but in regard to certificates of stock, they are the necessary parts of the machinery by which the business of every corporation is carried on. * * * In the case at bar the resolution does not, as in that case, authorize the making of *contracts* for the company, but it *directs* the performance of a mere ministerial act, necessary to the orderly conduct of its business in regard as well to the officer's stock as to that of other stockholders," and he presents other reasons and considerations, showing that a fair and reasonable construction of the authority conferred on the president and treasurer allows them to give certificates of their own stock as they did of the other stockholders.

There is another and a very material distinction between that case and this. The power there conferred was given to the president alone, and was exercised, if intended to be exercised, without the seal of the bank; but here the signature of the treasurer alone was not sufficient. That of the president, and, in addition to both, the corporate seal of the defendant was required to be affixed. The certificates presented to the plaintiff, on the faith and credit of which he parted with his money, conformed to all those requisitions. The ownership of the stock by the treasurer was therefore not certified by the party in interest alone; whereas the certificate by the president of the bank, in his official capacity, that his individual check drawn on it was good, was made by the same person who was to receive the benefit of it, and was signed by no other officer of the institution. That difference clearly distinguishes the case of *Claflin* (*supra*), from the present, not only in the character of its material facts but in principle. It follows from what has been said that the first conclusion of law by the referee, that the general power given to the treasurer did not authorize him to sign certificates in his own name and favor was erroneous, and consequently the

second based thereon, that this defect appearing on the face of those taken by the plaintiff charged him with notice of their invalidity was without foundation and therefore also erroneous.

It is not questioned by the defendant that it is liable to the plaintiff for the acts of its officers in issuing the certificates for spurious stock, as established in the present case, if they were authorized to issue certificates for valid stock held by themselves. Its liability for such acts is settled by the decision of the Court of Appeals in the cases of the *New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y., 30, 64), and *Bruff* v. *Mali* (36 id., 200), and the General Term, on the authority of those decisions, holding the defendant liable, properly reversed the judgment entered on the report of the referee.

Their order granting a new trial on such reversal must, therefore, be affirmed, and judgment absolute must, under the defendant's stipulation, be rendered against it; with costs.

All concur.

Order affirmed and judgment accordingly.