FIRST NATIONAL BANK OF MIDDLETOWN, NEW YORK, RESPONDENT, *v.* COUNCIL BLUFFS CITY WATER-WORKS COMPANY, APPELLANT.

*Estoppel — power exercised, without authority, by an agent, of executing notes in the name of his principal — implied authority.*

The mere fact that an agent has, in one or more instances, made notes in his principal's name and applied the proceeds in part to the payment of his principal's debts without the latter's knowledge, creates no liability on the part of the principal for notes subsequently made by the agent in the name of the principal.

In order to create such an agency, by representation or estoppel, it is essential that the principal should have knowledge of the assumption by the agent of the powers he has exercised.

There is nothing in the nature of the business of a water company from which it can be implied that its treasurer, by virtue of his office, has authority to borrow money and to give notes of the company therefor.

APPEAL by the defendant, the Council Bluffs City Water-Works Company, from a judgment, entered in the office of the clerk of the county of Orange on the 18th day of December, 1889, in favor of the plaintiff, upon the report of a referee.

The action was brought to recover upon two promissory notes alleged to have been made by the defendant corporation, and to have been negotiated to the plaintiff for value before maturity. The defendant alleged in its answer, among other things, that the notes mentioned in the complaint, and each of them, were made, executed, issued and delivered, if at all, by one Harry Allen, purporting to act as treasurer of the defendant, but not for any just debt or in connection with the business of the defendant; but that the said Allen, thereby intending to cheat and defraud the defendant, issued and delivered said notes, and each of them, signed with the name of the defendant, after he had ceased to be treasurer of the defendant, for his own individual and personal use.

*James L. Bishop*, for the appellant.

*William Vanamee*, for the respondent.

PRATT, J.:

It is plain that a gross fraud has been perpetrated upon the defendant in this case, and the main question is whether the com-

pany has so acted as to be estopped from denying the validity of the notes sued upon in this action. The general principle that the officers of a corporation are special agents and have only the authority conferred on them by the by-laws, and that all persons who deal with them are bound to take notice of the extent of their authority, is too well settled to require comment or citation of authorities.

The notes in suit were never made under any authority of the by-laws or board of directors, but it is sought to hold the defendant liable upon the ground that Allen was a financial officer of the corporation, and, therefore, held apparent authority to indorse the notes so far as *bona fide* purchasers are concerned; and, second, that the previous conduct of Allen had been such in issuing the notes of the corporation that the corporation must be held to have authorized the making and indorsement of the notes in suit (Citing *Bank of Batavia* v. *New York, Lake Erie and Western Railroad Company*, 106 N. Y., 195, and other cases; also *Bank of Auburn* v. *Putnam*, 1 Abb. Ct. App. Dec., 80, etc.), and the question is whether the facts bring the case within the rules just cited.

There was no evidence that any part of the proceeds of the notes sued on came to the use of the company. The bonds and money which Allen received for these notes he retained. As to the bonds, the evidence was that he still had them. As to the money, it went into his individual bank account and he refused to say that he paid any debt of the company out of that bank account after he received the money. He would not even say that he kept the money for the payment of what the company owed him, although he tried to produce that impression. There was no evidence, however, that the company owed him anything, except his general statement that they owed him something, but *what* the something was he did not attempt to say. Of course, as treasurer of the company, he could not issue its notes and sell them and pocket the proceeds under the pretense that the company owed him money, without showing some authority outside of himself for such a transaction, and without establishing in the most satisfactory manner that the company was indebted to him for the amount which he so obtained.

The referee found that the proceeds of some of the previous notes made by Allen were applied, " to at least some extent," to the payment of the debts and obligations of the defendant. This fact would

tend to establish the company's liability for the notes sued on under the theory that they were responsible in thus having held Allen out as their agent to make their notes. But in order to create such an agency by representation or estoppel, it is essential that the principal shall have knowledge of the assumption by the agent of the powers he has exercised. In order to create a liability in this case, therefore, it was necessary to go a step further in the findings and to find that the company had knowledge of the fact that Allen had so applied the proceeds of these notes. There not only is no such finding, but the referee has expressly found that the directors had no knowledge that Allen had assumed to make the notes of the company and that they never authorized him to do so. The finding with regard to the application of the proceeds of these notes, therefore, does not go far enough to establish a liability in this case. The fact that an agent has in one or more instances made notes and applied the proceeds in part to the payment of his principal's debts, without his knowledge, creates no liability on his part for the agent subsequently making notes in the name of the principal.

Again, the notes sued on were delivered to Van Steenburgh on February twenty-eighth. He says that he agreed to buy them, and to give Allen bonds to the amount of $8,500, and $4,600 in cash. Only two of the bonds for $500 each were delivered on that day, and the rest of the bonds and the cash were not to be delivered until Van Steenburgh discounted the notes. Allen was removed as treasurer on February twenty-eighth, and the notes were not discounted by the plaintiff until nearly a month later. Allen could tell nothing about what he did with the two bonds he received, and was very indefinite and uncertain as to when he received them. The story as told by these two witnesses is not very satisfactory. It looks as though the truth really were that Mr. Van Steenburgh proposed to take the notes of the company provided he could get them discounted, and to give Allen some of the proceeds and to sell some of his bonds; but it is extremely doubtful whether he ever agreed to take the notes until after he should first ascertain whether the bank would discount them. That seems to be very probable from the testimony of Mr. Royce, the bank president. Whether the notes had a legal inception before February twenty-eighth is certainly very doubtful, *but if they did*, the referee's finding, that Allen had *no*

*authority to make the notes of the company, and that the board of directors never authorized him to make the notes, and never knew that he had previously assumed to do so,* puts this case upon a *single* point, that some of the proceeds of some of the previous notes had been used by Allen to pay the debts of the company without the knowledge of the company or its officers, and that, therefore, the company became liable for Allen's acts in subsequently issuing the notes of the company and applying the proceeds thereof to his own use. The evidence that Allen had applied any of the proceeds of any of the previous notes to any of the debts of the company was of the most unsatisfactory character. His evidence is made up of loose, general statements and conclusions. He does not specify any debt of the company, nor does he point out any entry upon his own books nor upon the books of the company of any such payment. And upon cross-examination it was made to appear, that when he was talking about the debts of the company, he included in that term his own individual liability, or certain debts of Mr. Hopkins which he had assumed to pay. This finding of the referee, therefore, stands upon evidence which will not bear critical analysis or examination. But it is a misnomer to say that some of the proceeds of the previous notes were used for the company, as it is clear that the proceeds went into the private bank account of Allen & Head, and that if they paid any obligations of the defendant it was in pursuance of a private arragement with other parties, and was only what Allen had agreed to do personally; and it was, therefore, his own debt, the defendant company having provided for all its obligations by an issue of bonds. In other words, the defendant issued bonds for all its purposes. Parties, among whom was Allen, became possessed of the bonds, agreeing to pay all the obligations of the company. It was to pay this personal obligation of Allen that the money, "to some extent," as the referee says, was used. In fact, these notes were never authorized, and no part of the proceeds were ever used for the benefit of the defendant.

This water company was not a trading or banking corporation, and there was nothing in the nature of the business that implied that the treasurer, by virtue of his office, had authority to borrow money and give notes therefor. Under all the circumstances, it becomes a serious question whether the plaintiff was not put upon

inquiry as to the power of Allen to make these notes (*Claflin* v. *Farmers and Citizens' Bank*, 25 N. Y., 293), Allen having drawn the notes payable to his own order.

Under all the circumstances, we think there was no real or apparent authority in Allen to issue the notes; that none of the proceeds of these notes or any previous notes of the company ever went to the benefit of the company, and. that the judgment must be reversed and new trial had before the same referee.

BARNARD, P. J., and DYKMAN, J., concurred.