Minshall, J.
Independently of any question of negligence in the issue on the part of the company or its agents, it would seem, on the plainest principles, that the company should be held liable to an innocent holder for value of any part of the stock Issued by its secretary. The certificates were all signed by the president and the secretary, and had the corporate seal attached as required by law and the rules of the company. If stock so issued is not to be regarded as issued by the act of the company it is difficult to understand what would constitute an act of the company done in its corporate capacity. It is as much the act of the company as is the deed of a natural person signed, sealed and delivered by himself. This is so, or a corporation can do no act which can be regarded as done by itself. ' A corporation is a mere fiction created by law, and must, therefore, act through some human agency, or it cannot act at all. These agencies necessarily differ in character ; many simply • represent it as agents, others *379 represent it as a corporation in what they do, and their acts are its acts as much so as the act of an individual done by himself in his own behalf; i This is so as to all acts appointed by the law and its own rules to be done by a particular agent or agents, and can be done by no other officer or agent of the company, as is the case in the issue and transfer of stock. In Bank of Kentucky v. Schuylkill Bank, 1 Parsons’ Select Cases, where the liability of a corporation for the acts of what is well termed its “statuteagents,” is considered, the court says, p. 240; “Although a bank corporation is compelled, ■ by the incorporeal nature of its essence, to act by others, yet, when these are parts' of its organic machinery, like the cashier, it is as much reponsible for their omissions and commissions, as a natural person who employs assistants in the execution of anjr commission.” And it was there held that the Bank of Kentucky was liable to the holders of its stock that had been fraudulently transferred by its transfer agent, the Schuylkill Bank situated in Philadelphia; and the latter bank was held liable to the Kentucky Bank, for the fraud of its cashier to whom it had intrusted the service it had undertaken as the transfer agent of the Bank of Kentucky. It is required by the statute, and, in this ease, by the by-laws of the company, that all certificates of stock should be issued by the president and secretary of the company, attested by its seal. Stock certificates can be issued in no other way and by no other agencies of the company. Section 3254, Revised Statutes, and rule 10 of the by-laws of the company. In the absence of any knowledge of fraud in its issue, we know of no rule of diligence that requires one in purchasing such stock to inquire beyond the genuineness of *380 the certificate on its face. If the signatures of the president and the secretary are genuine and the seal has been, affixed, and the paper on its face a certificate of stock, to require one without knowledge of any fraud in its issue, before purchasing it, to inquire of the company or any of its officers as to whether it is genuine, would be to require a degree of care not exacted in any other similar business transaction; and not observed by the most careful business men in dealing in the stock of a company. And hence the omission to make such inquiry is not such negligence as to deprive the holder of stock innocently acquired, of his remedy against the company on a refusal to transfer it as promised in the certificate. The- fact that the certificate appears on its face to have been issued to the secretary as the owner of it, cannot be regarded as a suspicious circumstance, where, as in this case, he was not forbidden to hold stock, and, as found, 650 valid shares had been issued to him. Railroad Co. v. Bank, 60 Md., 36, 48; Titus v. Turnpike Road, 61 N. Y., 237, 242. As the secretary had the right to hold stock, and did hold it, and as but one mode is provided by statute and the rules of the company for the issue of stock certificates, the fact that a certifícateos issued in his favor, cannot, of itself, be adjudged a circumstance calculated to place an ordinarily prudent man on inquiry. This is shown by the fact that it did not excite inquiry in the minds of any of the numerous persons who became the owners of such stock, men accustomed to such business, and including some of the most careful business men of Cincinnati. Protection against the possibility of such frauds, is provided in the requirement that the certificate shall be signed by the president as *381 well as the secretary. Either, by this requirement, must be deemed a sufficient check on the dishonesty of the other, where the company itself has provided no other check. Where, then, one of the officers becomes negligent, or conspires with the ‘other to commit a fraud on the company by the issue of spurious stock, which comes into the possession of an innocent holder for value, who should more reasonably suffer the loss, than the company, who selected its president and secretary, and thus placed it in the power of one or both to practice the fraud? The law has always been careful to protect the rights of the innocent third person under such circumstances. When one by the .fraud of another is induced to make and deliver him a deed, who then sells and conveys the land to an innocent purchaser for value, the latter is protected against the fraud that had been practiced by his grantor in acquiring the land; for the reason that having no knowledege of the fraud, he had the right to rely on the deed held by his grantor. This is the doctrine of innocent purchaser for value, and is of very general application. It rests upon the principle that where one of the two innocent persons must suffer by the wrongful act of another, he must bear the loss that placed it in the power of such person to do the wrong. This is but the application of the principle, sanctioned by time and the dictates of natural justice. Thus in Lickbarrow v. Mason, 2 D. & E., 70, it is said that “Whenever one of two innocent persons must suffer by the act of a third, he who has enabled the former to occasion the loss must sustain it.” The same principle is expressed in another form by Lord Holt in Hern v. Nichols, 1 Salk., 289, who there says: “For seeing somebody *382 must be loser by this deceit, it is more reason that he that employs and puts a trust and confidence in the deceiver should be loser, than a stranger.” The principle has recently been applied in two cases in this court. Schultz's Admr. v. Colvin, 55 Ohio St., 274 ; Stranahan v. Coit, 55 Id., 398.
So far as we have considered the liability of the company to innocent parties as resting simply on the ground that the issue of the fraudulent certificates was an act done by the company in its corporate capacity, and affecting it, irrespective of any question of care, in the same manner that any similar act done by a natural person would affect him whether done by agent or not.
But there is another element in this case presented by the finding- of facts, on which the cross-petitioners rely as fixing the liability of the company to them, and that is negligence of the company and its agents in regard to the isssue of these spurious certificates by its secretary. The facts in regard to this are set forth in the fourth and sixth findings contained in the statement of the case. From these findings it appears that the president signed from time to time a large number of certificates in blank and entrusted them to the secretary, who fraudently filled them up in his own favor, and obtained loans upon them by pledging them as security; that the president gave little, if any, personal attention, to the transfer of stock; that from November 9, 1881, the books of the company showed entry after entry that was suspicious on its face, and that very little investigation of these books would have disclosed the fraud being practiced by Doughty; and the court then expressly finds that the directors and president ¿‘were negligent in the examination and supervis *383 ion of the certificate books and register of transfers, and the certificates from time to time surrendered and in possession of the company for cancellation, and of the use being made by Doughty of certificates signed in blank, and that such negligence enabled Doughty to commit the frauds’’ before referred to.
The general rule is that a corporation, like a natural person, is liable for the negligence of its agents, causing injury to others, where the act done is within the scope of their agency, whether the act be one of omission or commission. Story on Agency, section 452; Tome v. Railroad Co., 39 Md., 36; Railroad Co. v. Bank, 60 Md., 36, 43. But in answer to the claim of liability on the ground of negligence the company asserts that there is no privity between it and third persons who may deal in its stock; that a certificate of stock is not negotiable; and therefore that neither the company nor any of its agents were under any legal obligation in favor of persons dealing in its stock to supervise the acts of its president and secretary in issuing or in transferring stock.
It is not necessary to determine whether a certificate of stock is a negotiable instrument, like a promissory note or bill of exchange. It is not a promise to pay money, and it has no period of maturity as such instruments have; yet as has been said, it is much like negotiable instruments. On its face, a certificate of stock is an evidence of the title of the person named in it to a certain number of shares, with an assurance to all persons that it will be transferred on the books of the company to any one purchasing it, on surrendering the certificate. In Bank v. Lanier, 11 Wal., 377, it is said: “Although neither in form nor character *384 negotiable paper, they (certificates of stock) approximate to it as nearly as practicable. It is easjr to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy with safety. He is told under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know, that whoever, in good faith, buys the stock and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him.” In re Bahia and San Francisco Railway Co., L. R., 3 Q. B., 584, is to the same effect; and it is there shown that the power of giving certificates is for the benefit of the company in general, as the effect of it is to make the shares of greater value. It is said in Cook on Stockholders, section 415: “To such an extent has the law of estoppel been applied to protect a bona fide purchaser of stock, that he is protected in almost every instance where bé would be protected if he were purchasing a promissory note or other negotiable instrument.”
The cases and authorities certainly show that the ciaim of the company that there is no duty (for that is all that can be meant by the use of the term privity), resting upon it or its agents, toward third persons, to observe care in the issue and transfer of its certificates of stock, and that as a consequence, it is not liable to them for negligence in such matters, is not well founded. From the character of the certificate it must be held to contemplate and know, that persons relying upon it *385 will purchase the certificate in the market and meet with loss, should the person named in it not be the lawful owner of it. It must therefore be held to care in regard to this, and answer for any loss, the result of its negligence, or of its agents.
There has been an effort to liken a certificate of stock to a bill • of lading and a warehouse receipt, and to apply the rule as to liability that seems to obtain in those cases. The principal case cited is that of Grant v. Norway, 10 C. B., 664, where it was held that “the master-of a ship signing a bill of lading for goods that have never been shipped, is not to be considered as the agent of the owner in that behalf, so as to make the latter responsible to one who has made advances upon the faith of bills of lading so signed.” This case, with many others like it, is placed upon the distinction, that a bill of lading is simply a contract of carriage, and whilst it may be used as a symbol of property, it makes no representation to third persons which they have a right to rely on, that the fact is as stated in the bill. In this there is a broad distinction between a bill of lading and a certificate of stock — the latter, as already shown, being an asuranee to the world that the person named in it is the owner of stock in the company, and that it will be transferred on the books of the company to a purchaser on a surrender of the certificate. No case is cited in which the rule of this class of cases has been applied to certificates of stock. It has not been applied in England where the ease of Grant v. Norway was decided as appears from In re Bahia and San Francisco Ry.Co., supra. It wás there held that a certificate of stock amounts to a statement, intended by the company to be acted on by purchasers of shares *386 in the market, that the person named in it is entitled to shares, and that the company is liable to one who in good faith acts upon it, though the certificate was void as between the company and the person named in it as owner. The case of Grant v. Norway, in its limited application, has not met with universal approval. Bank v. Railway Co., 106 N. Y., 195. In Mechem on Agency, section 717, it is said in commenting on the New York cases: “A different result has in some cases been-reached upon the same state of facts, but the doctrine of the New York court seems most consonant with reason and justice.” Among the eases so referred to he includes the case of Grant v. Norway. It is certainly much modified by the decision of this court, in Ensel v. Levy, 46 Ohio St., 255, where the maker of- a warehouse receipt was held estopped from setting up a claim against a bona fide purchaser, inconsistent with a statement in the receipt that the property would be delivered on compliance with the conditions named therein.
There are many cases decided by courts of last resort of the highest character, that either directly or in principle, sustain a recovery, in a case like this, on the part of an innocent purchaser for value, of a certificate of stock, on the refusal of the company to transfer the stock on its books to him. Every distinction does not constitute a difference ; for, as frequently observed by Lord Mansfield, the law. does not consist in decided eases, but of general principles that run through them and by which they have been decided. If it were different, the use of eases in applying the law would be of little help to the lawyer or judge. Cases are principally useful as tokens of what the law is in its generality. They bend to the prin *387 ciple, and not the principle to them. Therefore a difference in facts that does not amount to a difference in law, must be disregarded in applying the rule of a case. These observations are made because counsel, in commenting upon many of the cases relative to the subject, seem to have seized upon the slightest difference in facts, as calling for the application of a different rule. Some of the cases to which we refer as governing this one, are as follows: Railroad Co. v. Bank, 60 Md., 36; Railroad Co. v. Schuyler, 34 N. Y., 30; Bank of Kentucky v. Schuylkill Bank, 1 Parsons, 180, affirmed on appeal by the supreme court; Water Co. v. DeKay, 9 Stew. (N. J.), 548; Merchants, Bank v. State Bank, 10 Wal., 604 ; Bank v. Kurtz, 99 Pa. St., 344; Titus v. Turnpike, 61 N. Y., 237; Bruff v. Mali, 36 N. Y., 200; McNeil v. Bank, 46 N. Y., 325; Moore v. Bank, 55 N. Y, 41; Holbrook v. Zinc Co., 57 N. Y., 616; Bridgeport Bank v. Railroad, 30 Conn., 231; Tome v. Railroad Co., 39 Md., 36; Willis v. Fry, 13 Phila., 33; Bank v. Lanier, 11 Wal., 369; Allen v. Railroad Co., 150 Mass., 200; Jarvis v. Manhattan Beach Co., 148 N. Y., 652; Bank v. Street Railroad Co., 137 N. Y., 231.
Two of the cases above cited, the Bank of Kentucky v. Schyulkill Bank and Railroad Company v. Schuyler may be regarded as of the same family with this case. They both grew out of large over-issues of stock by a transfer agent of the respective companies. The large sums involved secured the employment of the ablest of counsel, who seem to have exhausted every resource of skill and ingenuity in making a defense for the companies against the claims of innocent holders of the spurious certificates. * Most, if not all, of the arguments advanced in subsequent cases, and now *388 urged in this case, were there pressed upon the attention of the.courts. But, in each case,.after the fullest consideration, and in opinions of unusual ability, they were rejected, and judgment given for the holders of the stock. In The Bank of Kentucky v. Schuylkill Bank, it was, however, directly for the plaintiff, the suit being for indemnity against its transfer agent, the Schuylkill Bank.
' The principle on which the decisions have generally gone, is the liability of a corporation for the acts of its agents, done within the scope of the agency conferred on them. There has been some controversy as to what is meant by “the scope of the agency,” but it seems now well settled, that an act, though wilfully, fraudulently or negligently done by an agent, is within the scope of his agency and charges the principal as to innocent third persons, where the act done — the making of a contract, the disposition of property, the transfer of stock and the issuing of certificates therefor, are within the powers conferred on him, as an agent. The language of the court in Bridgeport Bank v. Railroad Company, supra, is applicable here; “it is said that Schuyler was the agent of the defendant only to do rightful acts, and when he did wrongful acts he ceased to be their agent. If he committed ' the wrongful act in the course of his employment, if the doing of like acts was within the scope of his employment, then he was their agent throughout, so far as third parties were concerned. If this convenient doctrine is sound, when can a principal be held liable for the wrongful act of his agent? No man appoints an agent to do a wrong, and if the moment an agent transcends his authority his relation to his principal *389 ceases, when can a principal be held for a wrongful. act ? And yet it is well settled that he can be so held.” See, also, Mechera on Agency, section 739; Story on Agency, section 652; Beach on Priv. Corp., section 488; Bank v. Blakesley, 42 Ohio St., 645, 652.
In some of the cases importance has been attached to the negligence of the company, through irs proper agents, in not supervising the conduct of its business, and, whereby, the particular agent has been enabled to perpetrate his frauds. But I apprehend that upon an accurate analysis of the company’s liability in such cases, it will be found to rest on its liability for the acts of the agent who perpetrated the fraud. If the extent of his agency included the legitimate doing of an act of the kind done, then it will be liable though the act done was a fraud as to it and other persons. As to an innocent third person, affected by the agent’s wrong’ful act, the negligence of the company in not discovering or preventing the fraud, may accentuate his right of recovery, but does not, as I apprehend, add to nor create that right.
The plaintiff in error relies much upon the case of Moores v. Bank, 111 U. S., 156. We think it sufficient to distinguish that case from this, that the court there found that the plaintiff made the cashier of the bank, who committed the fraud, her agent to procure and have transferred to her the stock on which she proposed to loan him money, and that in doing so he acted for her, and not the bank; and, therefore, that' she, and not the bank, was responsible for his wrongful act in filling up the certificate in fraud of the bank as well as of the plaintiff. If the court was right in its assumption as to the fact of agency, then the deci *390 sion can have no application to this ease, because there is no such feature in it. In the facts as found, there is no suggestion that any' of the defendants employed Doughty to procure stock for them. If the court was wrong in its opinion as to the facts, then all that can be said of its decision, is, that it was upon a misconceived state of facts, and cannot apply here, although as a matter of fact the two cases should be found to be substantially alike in their facts. In the course of his opinion, the judge delivering it referred to a number of eases similar to this one, without any expression of disapproval, and placed the decision on the ground just stated. It may be further observed that the case does not seem to be in harmony with Allen v. Railroad Company, 150 Mass., 200, where, on a state of facts quite similar, the court held the treasurer who committed the frauds to be the agent of the company, and not of the party purchasing the stock. The case of Claflin v. Bank, 25 N. Y., 293, has been cited as sustaining the contention of the railroad company. But this case was distinguished from a case like the present one by the court delivering the opinion, as well as by the same court in the later case of Titus v. Turnpike Co., 61 N. Y., 243. In the former case the president of a bank, having a general ’authority to certify checks upon it as good, certified one in his own favor. This the court held was out of the ordinary course of business and contrary to business and legal rules and not within the scope of the agency, but was particular to distinguish it from the issue or transfer of a certificate of stock.
The recent case of Knox v. Eden Musee Company, 148 N. Y., 441, needs to be noticed. In that case *391 it will be observed, that Jurgens, the wrongdoer, was not the agent of the company to issue or transfer stock. His employment was simply to cancel surrendered stock. Surrendered certificates were by him abstracted from the safe of the company and pledged as security for a loan. With respect to this the court said: “If it can be said that the direction of the president to Jurgens to cancel the certificates made, him the agent of the company, for that purpose, it was an authority to destroy and not to use. His act in abstracting them from the safe and uttering them as valid certificates had no relation to the authority conferred. It was not an act of the same kind as that which he was authorized to perform. He had no apparent authority to issue them as genuine certificates, because he had no authority to issue certificates for any purpose.” This broadly distinguishes the ease from the one before us. No disposition is shown to modify the doctrine of the same court as announced in many previous cases, as to the liability of a corporation for the acts of the agents done within the scope of their employment, although not only negligently, but even fraudulently, done, and contrary to the purpose and instructions of the company. This clearly appears from the decision in James v. Manhattan Beach Co., supra, decided at the same term. The case draws the- distinction between negotiable instruments and certificates of stock. The former, though lost or stolen, are valuable in the hands of innocent purchaser for value, whereas the latter are not; .and the court treated the certificates abstracted by Jurgens as stolen from the company.
The fact that the court in general term, on setting aside the finding made in special term, that *392 inquiry at the office of the company -would have disclosed the fraudulent character of the stock in question, proceeded to render the judgment the special term should have rendered instead of remanding the ease for a new trial, was not error, for the reason that the finding was immaterial, as such care was not required under the circumstances; and its omission was not contributory negligence on the part of the defendants, or any of them, depriving them of a right to recover.
If the statements contained in a certificate of stock, made by a company, cannot be relied on by a purchaser in the market, without further inquiry, it may well be asked what real purpose •does the certificate subserve ? The language used by the court in Bridgeport Bank v. Railroad Co., 30 Conn., at 247, is pertinent to the question. “To require those who acted upon the certificate to ascertain, at their peril, from the books of the company, subject to the possibility of false entries by officers of the company in these books, whether the certificates were correct, is repugnant to the face of the certificate, to the purpose of it, and to the duties committed to the officers of the com•pany. It would defeat the transferability of the stock.” And, as observed in Willis v. Railroad Co., 13 Phila., p. 40, “Such an investigation is obviously superfluous where the officers of the corporation have done their duty, and will generally be. unavailing when they are engaged in the perpetration of a fraud.” And, in-Lavey v. Bank, Taney’s C. C. Dec., 310, 329, where it was held that purchasers of stock are not bound to look beyond the certificate, or to examine the books of the corporation, to ascertain the validity of the transfer, Taney, C. J., said: “A different rule *393 would render the right of every purchaser of stock in a hank insecure or liable to doubt, and greatly, impair its value, and would, moreover, seriously disturb the usages of trade and the established order of business in relation to this subject,, in a manner highly injurious to the community; for purchasers always rely on the certificate of the bank in which it is held, as conclusive evidence of ownership.” See, also, Railroad Co. v. Schuyler, 34 N. Y., 30, 71. The ease of Board of Education v. Sinton, 41 Ohio St., 504, does not require a different rule of diligence. There the court found from the character of the act, under which the bonds were issued, that they might be redeemed before due, and for this reason held that Sinton should have' inquired of the board before taking the bonds of the treasurer as security for a loan. The bonds had in fact been redeemed and placed in the hands of the treasurer for cancellation, and inquiry of the board would have disclosed that fact. -These particular bonds were regarded as not negotiable.
We may add that the finding of fact set aside is, more properly, a conclusion of law, and, as such, is not warranted by the findings made in the case. As the company did not discover the frauds until after the death of Doughty, it is difficult to see how an inquiry at the office of the company would have disclosed anything as to the fraudulent character of the certificates in question. But the authorities show and reason suggests, that there is no such rule of diligence required of those who, in the market, for value and in good faith, purchase certificates of stock, that are genuine on their face.

Judgment affirmed.