Joseph S. Taussig et al., Appellants, *v.* Julius Hart, Respondent.

A stock-broker employed to purchase stock for a customer cannot buy of himself, and when such a transaction comes to the knowledge of the customer he can repudiate it. It is no answer that the intention of the broker was honest, and that he did better for his principal by selling him his own stock than he could have done by purchasing in open market.

A stock-broker who has purchased stock for a customer is bound to keep at all times on hand or under his control ready for delivery to his customer, upon his paying the amount due from him thereon, either the particular shares purchased or an equal amount of other shares of the same kind. This obligation is the same whether the relation of pledgor and pledgee exists between the parties, or whether the broker holds the stock under a special contract.

Whenever the broker sells, failing to keep stock enough on hand to meet this obligation, the customer can ratify and claim the benefit of the sale, or can claim the value of the stock on the day of sale.

A subsequent acquisition by the broker of a sufficient amount of the stock to replace that which he held for account of his principal, does not relieve him from liability.

The engagement of a broker and his principal, under an agreement to buy and carry stock, is not to procure and furnish the stock when required; but to purchase and hold the number of shares ordered, subject to the payment of the purchase-price.

(Argued September 25, 1874; decided October 6, 1874.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of defendant, entered upon the report of a referee.

This action was brought to recover a balance alleged to be due plaintiffs by defendant, on account of various stock speculations. Plaintiffs were copartners, doing business in the city of New York as stock and gold brokers.

On or about the 25th day of October, 1866, the parties entered into a contract, whereby the plaintiffs agreed to purchase and sell as brokers, for the defendant such stocks and gold as he should direct, upon the conditions, that the defendant should deposit with the plaintiffs as marginal security at

least ten per cent of the amount invested in such stocks and
gold, and that the plaintiffs should advance the necessary
funds in addition to any funds in their hands belonging to the
defendant, to pay for such stocks and gold so purchased, and
that they should apply all funds received by them for stocks
and gold sold for defendant, and all funds received by them
as dividends upon defendant's stocks in their hands, and all
funds deposited by defendant with them as marginal security,
upon such moneys so advanced by them, or so much thereof
as should be necessary to repay them for all such advances
and for their commissions for buying and selling and interest
upon all balances in their favor from time to time upon
advances so made, at the rate of seven per cent per annum;
and that the plaintiffs should be entitled to commissions for
buying and selling such stocks and gold at the rate of one-
eighth of one per cent each way, upon the par value of such
stocks and gold. All stocks and gold purchased or sold to be
purchased or sold *regular*, that is to be delivered the next
business day after the purchase or sale thereof.

Under this contract large amounts of stocks and gold were
bought and sold. The only items in dispute were two, in
reference to which the referee found, in substance, as follows:
The plaintiffs on the 3d day of January, 1868, purchased on
account of defendant 100 shares Pacific Mail at 113, receiv-
ing a certificate thereof. On the same day they sold on their
own account 100 shares of the same stock at $113\frac{1}{8}$, and with-
out the consent of defendant delivered to the purchaser the
said certificate. On the 17th March, 1868, plaintiffs sold all
of the Pacific Mail stock belonging to themselves, and had
no stock to deliver to defendant. On the day last mentioned
Pacific Mail was worth $109\frac{5}{8}$.

On or about February 29th, 1868, defendant directed plain-
tiffs to purchase 100 shares Pacific Mail "regular." Plaintiffs
on that day purchased 100 shares at thirty days "seller's
option," at $111\frac{1}{4}$. On the same day they transferred on their
books to defendant, without his knowledge, 100 shares belong-
ing to themselves, for which, on the next business day,

March 2, 1868, they charged him 111⅜ per share, with a commission for the purchase amounting in all to $11,150.

As matters of law the referee found : That the plaintiffs did not purchase the 100 shares of Pacific Mail stock, as directed on the 29th day of February, 1868, for which they charged him on the 2d day of March, 1868. That the transaction in relation to said stock did not bind defendant, and that he is not liable for said stock.

That the plaintiffs, on the 17th day of March, 1868, wrongfully converted to their own use the 100 shares of the capital stock of the Pacific Mail Steamship Company, the property of the defendant, bought for him on the 3d day of January, 1868, and that the defendant was entitled to offset in this action, as of that day the value of said stock on that day, $10,962.50.

*Edward L. Andrews* for the appellants. The referee erred in allowing defendant as damages the value of Pacific Mail on March 17, 1868, as upon plaintiffs' subsequent acquisition of stock to deliver his damages were only nominal. (Sedgwick on Dam., 573 ; *Countess of R.'s case,* 1 Roll. Abr., 15 ; *Cook* v. *Loomis,* 26 Conn., 483 ; *Ford* v. *Williams,* 24 N. Y., 366 ; *Ewing* v. *Blomiss,* 20 Ala., 694 ; *Boker* v. *Drake,* 53 N. Y., 211.) The delivery of the certificate received to other parties did not constitute conversion. (*Stewart* v. *Drake,* 46 N. Y., 449 ; *Hoyt* v. *Collige,* Alb. L. J. Oct.)

*W. Shaw* for the respondent. An agent to purchase cannot himself be the seller. (*Lossard* v. *Hinman,* 6 Bosw., 8 ; *Bruce* v. *Davenport,* 36 Barb., 349 ; *U. Ins. Co.* v. *Toledo Ins. Co.,* 17 id., 132 ; *Bridenbecker* v. *Lowell,* 32 id., 9 ; *Morrisa* v. *A. R. R. Co.,* 52 id., 173 ; *Conkey* v. *Bond,* 36 N. Y., 427 ; *N. Y. C. Ins. Co.* v. *Nat. P. Ins. Co.,* 14 id., 85.) Defendant was entitled to the value of the 100 shares of Pacific Mail converted, as a counter-claim. (*Thompson* v. *Kessel,* 30 N. Y., 383 ; *Taussig* v. *Hart,* 49 id., 301.) It was plaintiffs' duty to keep at all times on hand ready for delivery the same or an equal amount of the stock purchased

on defendant's account. (*Nourse* v. *Prime*, 4 J. Ch., 489; S. C., 7 id., 69; *Horton* v. *Morgan*, 6 Duer, 56; S. C., 19 N. Y., 170; *Dykers* v. *Alstyn*, 3 Hill, 593; S. C., 7 id., 497; 22 How., 340.)

Rapallo, J.   The defendant had a right to repudiate the alleged purchase of 100 shares of Pacific Mail stock of which he was notified February 29, 1868, as soon as the facts came to his knowledge.   No such purchase as that stated in the notice had been made.   The purchase from Mr. Williams was not at 111⅜ regular, as stated in the notice, but was in fact at 111⅛, seller's option, thirty days.   That was not a compliance with the defendant's order, which was to buy the stock " regular " and the defendant was not bound to recognize the purchase from Mr. Williams.   But the plaintiffs allege that they transferred to the defendant's credit 100 shares of their own stock at 111⅜, on the day when the stock would have been deliverable had it been bought " regular."   That transaction did not help the matter.   It amounted to a sale by the plaintiffs of 100 shares of their own stock to the defendant, which was not binding upon the defendant, for the reason that the law does not permit an agent employed to purchase, to buy of himself.   It is no answer that the intention was honest and that the brokers did better for their principal by selling him their own stock than they could have done by going into the open market.   The rule is inflexible, and although its violation in the particular case caused no damage to the principal, he cannot be compelled to adopt the purchase.   Consequently, whether the purchase of 100 shares from Williams was for defendant's account, or the plaintiffs sold to the defendant 100 shares of their own stock, on either theory the referee was justified in rejecting that item of the account.

. The credit to the defendant of the value of 100 shares of Pacific Mail stock as of the 17th of March, 1868, was, in our opinion, properly allowed by the referee.   Whether the relation of pledgor and pledgee exists between a broker and his customers, or whether the broker holds the stock under a

special contract, makes no difference in the result. The broker is in either case bound to keep at all times on hand or under his control, either the particular shares purchased for his customer, or an equal amount of other shares of the same kind, and to have them in such a situation that the customer, on paying the amount due by him thereon, can at any time obtain them. / In the present case the plaintiffs, on the 3d of January, 1868, purchased on defendant's order 100 shares of Pacific Mail stock at 113⅛, and charged him therefor $11.312.50, and received from the seller a certificate for such 100 shares. On the same day they sold 100 shares of such stock, and on such sale delivered the identical certificate they had received on the purchase which they had made for defendant's account. If they had had no other shares on hand at the time, it would be quite clear that they had sold the defendant's shares, and that on learning of such sale the defendant could have adopted and claimed the benefit of it, or, as many cases hold, claimed the value of the shares as upon a conversion thereof by the plaintiffs to their own use. But the plaintiffs did at the time hold other shares of their own, which they could have delivered to the defendant. They, however, between that time and the 17th of March, 1868, sold and delivered all of these shares, and thereafter held none of the same kind of their own or which they could have delivered to the defendant, and went short of the stock. The most that they can claim is that so long as they had any 100 shares of Pacific Mail stock on hand, they had not sold the defendant's shares; but when they sold their last 100 shares and failed to keep any on hand to meet their obligation to the defendant, such sale must, according to the doctrine of all the cases, be deemed to have been a sale of the defendant's shares. He could ratify and claim the benefit of the sale, or claim the value of the shares on the day of sale. The referee has charged the plaintiffs with the value of 100 shares at 109⅝, which was the market value on the 17th of March, 1868.

The subsequent acquisition by the plaintiffs, after the stock had fallen to a very low figure, of a sufficient number of shares

to replace those which they had held for account of the defendant, did not relieve them from liability. Such reacquired stock was never accepted by the defendant, and he was in fact ignorant of the transactions. To allow a broker to sell his customer's stock without authority, and speculate upon replacing it at a lower price, would be encouraging speculations by agents, at the risk of their principals, totally inadmissible under familiar rules. Should the stock rise largely in price after the broker had thus divested himself of all control over the shares which he had purchased on the order of his principal, the broker might be unable to replace the shares, and the principal would have no remedy except a personal claim against the broker. This clearly is not what is contemplated under an agreement to buy and carry stocks. The customer does not rely upon an engagement of the broker to procure and furnish the shares when required, but upon his actually purchasing and holding the number of shares ordered, subject only to the payment of the purchase-price.

These are the principal points raised and argued on this appeal. None of the others are, in view of the findings of fact of the referee, sufficient, in our opinion, to justify a reversal of the judgment.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.