## MAYO v. KNOWLTON.

*(Common Pleas of New York City and County, General Term. June 2, 1890.)*

**FACTORS AND BROKERS—STOCK OWNED BY BROKERS—RESCISSION.**

   Plaintiff ordered defendant, as a broker, to buy for him a number of shares in a mining company, and the shares were delivered to him by defendant. Afterwards the mine was bought by another company, and the shares made convertible into shares of the new company, and plaintiff so converted his shares. Subsequently he claimed to have discovered that defendant did not buy the shares, but simply turned over some which he himself owned, and thereupon sought to repudiate the purchase, and for that purpose borrowed the requisite number of shares in the original company, and tendered them to defendant. *Held* that, in order to rescind the sale, plaintiff should have tendered the shares which he received in the new company, as he could not retain the subject of his purchase, and at the same time maintain an action for the wrongful act of the broker in delivering stock owned by himself.

Appeal from trial term.

Action by Sylvanus Mayo against Delorme Knowlton. Verdict and judgment for defendant, from which plaintiff appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Charles N. Morgan* and *Robert H. Worthington,* for appellant. *John R. Tresidder,* for respondent.

LARREMORE, C. J. This action was tried before Judge VAN HOESEN and a jury in May, 1887, resulting in a verdict for the defendant. The complaint sets up two grounds of action. It appears that at different times in the year 1882 the plaintiff, at the suggestion of defendant, purchased in the aggregate 4,000 shares of the stock of the Silver King Mining Company. It is alleged that, although the defendant assumed to act as an agent and broker in these transactions, the stock which he delivered to the plaintiff, upon receiving the purchase price thereof, was in reality stock owned by himself which he had merely transferred to the purchaser, himself retaining the said purchase price. It is also averred that certain intentionally false and fraudulent representations were made to the plaintiff by the defendant as an inducement to such purchase. The prayer for relief demands damages for the amount of such purchase price.

As to the first ground of action, I am of opinion that the learned trial judge correctly instructed the jury that they should "leave out of view the fact that Mr. Knowlton is charged with having been the owner of the stock that was delivered to Mr. Mayo. Mr. Knowlton denies that such was the case; but, though it had been so, it would not, in view of what the evidence discloses, have given Mr. Mayo a right of action." The general principle for which the appellant contends on this subject is undoubtedly well settled. If an agent, instead of purchasing stock for his principal from a third person or in the market, simply makes over stock of his own, the principal may re-

scind the transaction, tender back the stock, and demand a return of the consideration paid for it. A question of public policy is involved in this rule, and it applies, although perfect good faith was intended, and no loss has been sustained. *Conkey* v. *Bond*, 36 N. Y. 427; *Taussig* v. *Hart*, 58 N. Y. 425. The peculiar facts proved on the trial, however, take this case out of the operation of such principle. The transfers of stock to plaintiff were made before the month of September, 1882. In the latter part of 1883 the property and assets of the Silver King Mining Company were conveyed to the Silver King Mining & Tunnel Company, and the shares of the former mining company were made freely convertible into shares of the tunnel company, in all respects equivalent. Plaintiff having previously procured the shares in question to be registered in his name on the books of the mining company, thereupon exchanged them for shares in the tunnel company, which he still retains. He did not attempt to rescind the purchase until 1886, claiming that not until that time did he discover the alleged fraud. He went to defendant, and tendered, not the shares of the tunnel company which he had received in exchange, but he borrowed from different persons 4,000 shares of the mining company's stock, which had never been transferred, for the purpose of making such tender. Plaintiff admits that he was not the owner of the shares so offered to defendant, and that he borrowed them simply for the purpose of the formal tender. The fact whether or not defendant delivered to plaintiff stock owned by himself, and not secured by *bona fide* purchase, is immaterial, because the only right which could be conferred thereby would be that of repudiating the transaction and rescinding the sale. In order to do this, a party must always tender back the stock which he has received under such voidable sale. Here the plaintiff has not made any attempt to do this. He still holds the stock he received in exchange for the original stock, and presumably is gaining the benefit of such holding. If immediately after the discovery of the true nature of the purchase plaintiff had gone to defendant, and offered to restore as far as was within his power the property he had purchased, a different question would have arisen. The shares in the tunnel company were the equivalent of and in all respects stood for the surrendered shares of the mining company. A tender of those shares would have been the nearest plaintiff could have come to offering restitution. In my judgment, the so-called tender of 4,000 shares of mining stock which he did not own was merely an idle ceremony. Plaintiff's real position on this point is that he is authorized to retain the stock, but sue for damages. This position is untenable. A principal, under such circumstances, may either repudiate the transaction and demand back his money, or, if he so elect, may ratify the sale, retain the property, and reap its possible benefit. But he cannot hold on to the stock, presumably taking the chance of making gain thereby, and at the same time treat the wrongful act in delivering stock the agent himself owned as an independent cause of action for damages. The learned trial judge sent the case to the jury upon the question whether false representations were made as to the stock as an inducement to the purchase. Under the facts disclosed, this was the most that plaintiff could claim. We find no errors either in the charge or in the rulings upon the trial, and the judgment appealed from should be affirmed, with costs.