JACOB SNYDER et al., Respondents, v. CARMI V. LINDSEY, Appellant, Impleaded with Others.

1. PARTNERSHIP — FARMERS' CO-OPERATIVE STORE — ADVANCE OF MONEY AS CONTRIBUTION TO CAPITAL — EVIDENCE OF CONTRACT. When a resolution of the directors of an unincorporated business association, in the form of a joint stock company but in fact a partnership, conducting a farmers' co-operative store, and a certificate of stock issued on the advance of money to the association by a member, constituting the contract under which the money was advanced, clearly import as matter of law that the money was advanced as a contribution to capital and not as a loan, such written evidence of the transaction cannot be varied or contradicted by parol proof, in an action for a dissolution of the association and for an accounting.

2. IMMATERIAL EVIDENCE. When the only material question in connection with such advance of money is whether it was advanced as a loan or as an accession to capital, testimony as to what was said at the directors' meeting in regard to what should be done with the money by the company is immaterial.

3. IMMATERIAL EVIDENCE. When it appears on the face of such resolution that the money advanced was paid in on different terms than those under which the other members put in their money, an offer to show that fact is immaterial.

4. UNLAWFUL ACQUISITION OF ASSETS BY MANAGER OF ASSOCIATION. The managing member of an association constituting a partnership conducting a mercantile business occupies a trust position towards the other members, as well as to creditors, and cannot, by what is in substance and legal effect a transfer by him to himself, through nominal intermediaries, become possessed of the entire assets of the concern.

5. ACCOUNTING — ALLOWANCE FOR LIENS PAID. On an accounting by the managing member of a partnership for assets unlawfully transferred by him to himself, there should be deducted from the value of the goods for which he is accountable the amount of the liens of creditors paid by him, his claim as creditor being correspondingly diminished.

*Snyder* v. *Lindsey*, 92 Hun, 432, modified.

(Argued November 30, 1898; decided January 10, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered January 9, 1896, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

This action was brought to dissolve an association doing business under the name of the Farmers' Exchange (Limited),

at Attica, in Wyoming county, N. Y., for an accounting and for a final adjustment of the rights and interests of the several parties therein.

The facts, so far as material, are stated in the opinion.

*O. H. Hopkins* for appellant. It was error for the referee to refuse to allow Lindsey to show what was said at the meeting of January 28, 1893. It was also error to exclude evidence that the money was put in by Lindsey upon different terms than that which the other members put money into the association. (*Rosenburg* v. *Block*, 102 N. Y. 259; 1 Rice on Ev. 318; 37 Kans. 606.) The chattel mortgage was valid between the members of the company. (*Nelson* v. *Drake*, 14 Hun, 465; *Mabbett* v. *White*, 12 N. Y. 454; *Graser* v. *Stellwagen*, 25 N. Y. 315.) It was an error for the referee to allow witness Hersch to answer the question, " What did Evans say in regard to the inventory ? " (1 Greenl. on Ev. §§ 101, 102, 114, 180; *Budlong* v. *Van Nostrand*, 24 Barb. 25; *Fogg* v. *Child*, 13 Barb. 246; *White* v. *Miller*, 71 N. Y. 119; *Congdon & Aylesworth Co.* v. *Sheehan*, 11 App. Div. 456; 1 Phillips on Ev. [4th ed.] 512; *Matter of Myers*, 131 N. Y. 409; *McKensie* v. *Farrell*, 4 Bosw. 192; *Connors* v. *Meir*, 2 E. D. Smith, 314; *Stuart* v. *Binsse*, 10 Bosw. 446; *Edgerton* v. *Wolf*, 6 Gray, 453; *Shaler* v. *Bumstead*, 99 Mass. 127.)

*O. P. Stockwell* for respondents. The rulings of the referee in excluding evidence were proper. (*Neil* v. *Thorn*, 88 N. Y. 270; *Park Bank* v. *Tilton*, 15 Abb. Pr. 384; *Morgan* v. *Reid*, 7 Abb. Pr. 215; *Hay* v. *Douglass*, 8 Abb. Pr. [N. S.] 217; *Jackson* v. *Parkhurst*, 4 Wend. 369.)

O'Brien, J. For about two years prior to November, 1893, a large number of persons, including the plaintiffs and the defendant, owned and conducted what is known as a farmers' co-operative store. They conducted a general mercantile business in the purchase and sale of merchandise. It was not incorporated, although it adopted by-laws and elected officers

78

in practically the same way as a corporation or joint-stock association. The primary purpose of the association was to furnish to its members such goods as they needed, at a reduced price. The capital for the conduct of the business was furnished in small sums by each member, for which he received a paper in the form of a certificate of stock, which represented his interest in the concern. It was, for all practical purposes, a mere partnership as between the members themselves and their creditors. On the 11th day of November, 1893, the defendant Lindsey was the president and general manager of the association, and on that day, as the referee has found, he proceeded to execute and deliver to his son a chattel mortgage on all the property of the concern, which consisted of a quantity of goods then in the store. The consideration expressed in this mortgage was $1,500, said to be for money loaned to the association. The mortgage became due on the 14th of January following, and contained the usual clause permitting the mortgagee to take possession of the goods whenever he deemed himself unsafe. The referee has found that in fact the concern did not owe the son anything, and that the mortgage was without consideration and fraudulent. On the same day of the execution of the mortgage the son executed to another person, who was a clerk in the store under the defendant, a bill of sale of all the goods, constituting, as already stated, the whole assets of the concern. A short time after, under some arrangement between the defendant and the party who had received the bill of sale, the defendant took possession of all the property as his own, and assumed to sell and dispose of it at public and private sale, not as the property of the association, but as the individual owner of the whole concern, in virtue of the transfer made by him to his son, and by his son through a bill of sale to another party, and by that party again to the defendant himself.

The referee has held that all these transfers were fraudulent; that the defendant acquired no title to the property under them, and having sold the goods and appropriated the proceeds to his own use, that he must account for the same in

this action, which is brought by two members of the concern, in their own behalf and in behalf of their associates. The conduct of the defendant in thus dissolving the association and putting an end to the business was held to be wholly unauthorized.

The questions arising upon the trial of the case were mainly, in their nature, questions of fact, and the findings of the referee upon such facts having been confirmed by the General Term we have no power to interfere with them. The defendant claimed that the chattel mortgage which he executed and delivered to his son, the bill of sale by the son to a third party, and the transfer by that third party to the defendant, was with the consent of the other members of the association. But the referee found, upon sufficient evidence, that no such consent was given.

The only questions before us for review arise upon one or two exceptions taken by the defendant's counsel upon the trial before the referee. On the trial the defendant claimed that at the time he executed the chattel mortgage his son was a creditor of the concern and the assignee of another member of the association who also claimed to be a creditor, and he sought to establish the fact that the mortgage was given as security for this debt. The facts in regard to this claim were these : It seems that the association had a number of directors, and at a meeting held on the 28th day of January, 1893, a resolution was passed in substance, as follows : That the son, who was a member of the association, and one of his neighbors named Cowden, were to invest the sum of $1,000 each in the concern, and receive for their compensation three per cent thereon. They and a clerk in the store were also to receive five per cent between them for handling and shipping farm products in car lots, and for the money so advanced they were to take one hundred shares each of the stock of the concern and share *pro rata* in profits with the other shareholders. They were also given the privilege to withdraw the amount so invested in the stock of the company at the end of a year, by selling goods from the store at regular rates. The resolu-

tion also provided that a committee should be appointed to
look after the printing of a constitution and by-laws and to
take necessary steps for the incorporation of the concern.
This resolution was recorded in a book kept for that purpose,
and the defendant, his son and the other party so investing
the money were present, and at all times had access to these
records.   The son and Cowden received certificates of stock
in the same form as those issued to other members.   The
defendant at the trial called one of the shareholders as a wit-
ness, who testified that he was present at the meeting when
this resolution was passed.   The defendant's counsel pro-
pounded to him the following question : " What was said at
that meeting in regard to what should be done with the money
by the company ? "   This question was objected to by the
plaintiff's counsel.   The objection was sustained and an excep-
tion taken.   The defendant's counsel then offered to show that
this money was put in by the defendant's son and his associ-
ate, who had assigned to him, " upon different terms than
the other members put money into the association, and
that they were to have the privilege of selling the goods and
drawing their money out in that way."   This testimony was
objected to, the objection sustained by the referee and an
exception taken.

The two exceptions may be considered together.   It is
manifest that the resolution passed by the directors, and the
certificate of stock issued thereafter, represented the contract
or agreement under which the defendant's son and his assignor
advanced the money to the copartnership of which they were
members.   It was either a loan, or an accession to their capi-
tal.   They became by the transaction either lenders of money
or shareholders in the partnership.   Whether they were the
former or the latter may be solved by a very simple and prac-
tical test.   If, after they had put in the money, the concern
had made large profits, instead of losses, would they have
been entitled to share in those profits beyond the stipulated or
legal rate of interest?   In other words, if, after this arrange-
ment, they insisted upon sharing in the profits of the concern,

however extensive, and the other members objected and claimed that the moneys so invested were a mere loan and not a contribution to the capital, as a reason for depriving them of the right to share in the profits, could such claim of the other members be upheld? It seems to me not, and that it is quite clear that, in view of the circumstances as evidenced by the resolution and certificate of stock, the other members could not claim that they were mere lenders of money, entitled only to the simple interest stipulated, and without any right to share in the profits of the concern as partners. The resolution and the certificate, when read together, clearly import as matter of law, that the money was advanced by these members as capital, subject to the risks of the business and entitled to share in the profits. It would not have been competent for the other members to deprive the son and his associate of their share of the profits, had there been any, to be computed upon the amount of the money thus put into the concern and an offer of proof for that purpose must have been excluded. They would not have been permitted to show by oral proof that the resolution and certificate constituted a contract between the persons advancing the money and the other members different from that which appears upon the face of the instruments. They would not be entitled to show that at this meeting verbal declarations were made by which the contract was made to assume the form of a loan of money to the concern. The rule of law cannot be different when these conditions are reversed. Upon the trial it was for the interest of these two persons to show that the transaction was a loan and not a contribution of capital. But the written evidence of the transaction showed otherwise, and it could not be varied or contradicted by parol proof in the absence of fraud or mistake. But the referee, I think, was also justified in sustaining the objections on other grounds. The question "What was said at that meeting in regard to what should be done with the money by the company?" called for no material fact. It was utterly immaterial what was said with respect to the disposition that the company should make of the money after it

had been paid over to it. That did not tend in the least to show whether the money was advanced as a loan or as an accession to the capital, which was the only material question in that connection.

The offer to show that the money was put in by these two persons on different terms than those under which the other members put in their money, was also immaterial, for, on the face of the resolution, it appeared that such was the fact, since there was a provision made for the distribution to them of a larger share of the profits than the other members were entitled to. The offer was not, in terms, or by any fair implication, to prove that those two members advanced the money upon a loan, but merely to show that the money was paid over under a different arrangement, and all that appeared on the face of the resolution. Moreover, it is evident that had the witness been permitted to answer the question, the testimony could not have aided the defendant, since, at a subsequent stage of the trial he himself testified in substance that, at the time of the execution of the chattel mortgage, the association was not owing his son anything outside of his stock, and that the mortgage was given to his son to secure the money he paid under the resolution.

It is difficult to see how the referee, in any view of the case, could have sustained these transfers. The defendant was the general manager of a partnership conducting a mercantile business, and as such mortgaged, without the consent of the other partners, all the firm property to his son and in effect dissolved the partnership and terminated the business. His son, to whom he gave the mortgage, then proceeded to give to a clerk in the store under the defendant a bill of sale of the goods, and that clerk by some arrangement immediately transferred the possession and ownership of everything back to the defendant, who proceeded thereafter to dispose of the stock as sole owner thereof to the exclusion of all the other associates. It was in substance and legal effect a transfer by the defendant to himself of the partnership stock. He was occupying a trust position toward the other members of the

association, as well as to the creditors, and he could not in this way become possessed of the entire assets of the concern. (*Claflin* v. *F. & C. Bank*, 25 N. Y. 293; *Welles* v. *March*, 30 N. Y. 344; *Bain* v. *Brown*, 56 N. Y. 285; *Taussig* v. *Hart*, 58 N. Y. 425; *Murray* v. *Beard*, 102 N. Y. 505.)

The defendant was, therefore, properly held liable to account to the partnership for the value of the goods thus appropriated by him. But the value of the goods was one of the principal questions litigated at the trial, and there is reason to believe that the inventory value, which was finally adopted by the referee, was in excess of the real value. The evidence, however, was conflicting and the finding of the referee in that respect is not open to review here.

It appears, and is conceded, that the defendant about the time the goods went into his possession, or perhaps before, paid debts against the concern to the extent of $896.57. One of the creditors of the concern had brought an action against it and procured an attachment for a debt of about $700, which was a lien upon the property at the time it went into the defendant's hands. The defendant having paid and discharged this lien, and some other small claims, should not be required to account for the full value of the goods to the representatives of the partnership. The only interest that the concern had in the goods was represented by their true value after deducting therefrom all liens which the creditors had. The value of the goods for which he should account should be diminished by the sums so paid by. him, and of course his status and claims as a creditor should be correspondingly diminished.

The judgment should be modified in this respect, and as so modified affirmed, without costs to either party in this court.

All concur (MARTIN, J., in result), except GRAY, J., absent.

Judgment accordingly.