SHIEL v. STONEHAM et al.

(Supreme Court, Appellate Term. June 21, 1912.)

1. BROKERS (§ 29*)—PURCHASE OF STOCK ON MARGIN—DUTY OF BROKER.

Where brokers are employed to purchase stock on margin, they may purchase it in their own name and mingle it with their own certificates; but they are bound at all times to have under their control for delivery to plaintiff the number of shares purchased by him, and if they fail to purchase and retain the stock for which plaintiff has partly paid, then they have diverted his money, and are bound to account for it to him.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 22; Dec. Dig. § 29.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BROKERS (§ 26*)—PURCHASE OF STOCK—MARGINS—OWNERSHIP.

Where a broker is directed to purchase stock for a customer on margin, the stock, subject to the broker's lien for advances, belongs to the customer, and, except for such lien, the broker has no interest therein.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 20; Dec. Dig. § 26.*]

3. BROKERS (§ 36*)—STOCK—PURCHASE ON MARGIN—RESALE.

Where a broker, after purchasing stock for a customer on margin as directed, and notifying him of the purchase, resold or used the stock in a manner inconsistent with the customer's ownership and his right to demand its delivery, then the broker may not claim that he used the customer's money to purchase the stock as directed, and in case of his inability to deliver the stock on demand and a tender of the balance of the price the customer may at once rescind and recover the amount of his deposit, and is not required to accept a subsequent tender of stock thereafter purchased or acquired.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 29, 30; Dec. Dig. § 36.*]

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Pierre A. Shiel against Charles A. Stoneham and another, doing business as Charles A. Stoneham & Co. From a judgment in favor of defendants on their counterclaim, plaintiff appeals. Reversed.

Argued June term, 1912, before SEABURY, LEHMAN, and BIJUR, JJ.

James S. McDonogh, of New York City (Francis X. McDonough, of counsel), for appellant.

Leo J. Bondy, of New York City, for respondents.

LEHMAN, J. The plaintiff employed the defendants as brokers to purchase for him a considerable number of shares of mining stock. The transaction was what is popularly known as a purchase on margin; i. e., the plaintiff did not pay the full price of the stock, but it was understood that the defendants should pay part of the purchase price, retaining the stock as security. The defendants notified the plaintiff of the purchase of the stock and rendered him an account thereafter showing the amount due to them. On December 11th the plaintiff went to the defendant's office and demanded the stock, at the same time tendering to the cashier the amount claimed to be due on the purchase price. The cashier telephoned to various parties asking for a loan of this stock, and then stated that he must send to Salt Lake City or Toronto to obtain plaintiff's stock. Two days thereafter the plaintiff's attorney demanded the return of the money paid, and at that time the defendants tendered to the plaintiff certificates for the number of shares of stock which plaintiff had directed the defendants to purchase for his account. It was shown that these certificates were purchased on the day previous, or a day after the demand of the plaintiff for the stock.

Thereupon the plaintiff brought suit for the amount of the moneys paid to defendants, and the defendants counterclaimed for the amount of the purchase price still unpaid according to the account rendered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the trial the defendants showed that they had actually purchased the stock at the times and prices shown by their account. They also testified to the conclusion that they had at all times in their control sufficient stock to deliver to plaintiff on demand the stock ordered by him. Upon these facts the trial justice rendered judgment for the defendants for the amount of their counterclaim, apparently upon the theory that since the defendants purchased the stock when ordered, and tendered the stock two days after demand, they had fully performed their duty as brokers.

[1-3] The defendants were employed only as brokers in the purchase of this stock. If they failed in their duty as brokers, and failed to purchase and retain the stock for which the plaintiff had partly paid, then they have diverted the money paid by the plaintiff and must account for it to him. While undoubtedly they had a right to purchase this stock in their own name and to mingle it with their own certificates, they were bound at all times to have under their control for delivery to the plaintiff the number of shares purchased by him. The stock, subject to their lien, was to belong to the plaintiff, and except for their lien they had no interest in it. The money delivered to them was delivered only to be used upon the purchase of stock, which was to be owned by the plaintiff. If, after purchasing this stock, they resold it, or used it in a manner inconsistent with the ownership of the plaintiff and his right to demand its delivery, then they are not in a position to claim that they used the money in the purchase of plaintiff's stock as directed. In such case it would rather appear that they have used it in the purchase of stock which they have treated as their own. A broker is merely employed to buy stock for his client, and moneys paid to him on account of the purchase price are paid to him merely as an agent. If he fails to purchase the stock when ordered, hoping to buy the stock when demanded at a lower price and pocket the difference, he has concededly converted his client's money. If he does purchase the stock when ordered, but treats that stock as his own, parting with its control, so that he cannot deliver it to the client upon demand, then it seems to me that he has also failed to obey the directions to buy stock for the client, and has also converted the client's money.

The sole question in this case, therefore, is whether or not the defendants, after purchasing the stock at the time directed by the plaintiff, treated the stock as belonging to the plaintiff, and at all times had within their control sufficient stock to deliver to the plaintiff upon payment by him of the amount due. It seems to me that when the plaintiff showed that they failed to deliver the stock to him when he demanded it on December 11th, tendering a certified check for the amount due, and showed that they stated that they must send to Toronto or Salt Lake City for the stock, he made out a prima facie case. If this admission is unexplained, it shows, in my opinion, conclusively that the defendants had treated the stock as their own, and had not in their control any stock which they could deliver to plaintiff upon tender of the amount due. Even if they had stock in those cities under their control, it is quite evident that they could not deliver that

stock to the plaintiff upon demand. In order to rebut the plaintiff's prima facie case, the defendants were bound to explain or deny the admission and to show that they did have the stock in their control which they could deliver to the plaintiff.

The defendants on this appeal claim that the case of Helm v. Ennis, 109 App. Div. 42, 95 N. Y. Supp. 1040, is not in accordance with this view, and that the decision in that case was to the effect that a delivery of certificates of stock purchased and delivered three days after a demand is sufficient to show that the brokers at all times had sufficient stock in their control. The plaintiff in that case, however, had received, retained, and paid for the stock tendered, and brought suit merely to recover the difference in the market price between the stock purchased for the purpose of delivery, upon the theory that since he had not received the identical certificates purchased he could not be held for their price, but only for the price actually paid for the certificates. The court in that case held only that since the broker had a right to take the certificates in his own name, and to deliver to his client a certificate for an equal number of shares when demanded, if the client received the certificates, he was bound to pay the price at which the purchase was originally made. It expressly, however, refused to pass upon the question of the client's rights, if the client had elected to rescind the entire transaction and return the stock.

Judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

SEABURY, J., concurs.

BIJUR, J. I concur for reversal of the judgment, which in effect sustained defendants' counterclaim, on the ground that it sufficiently appears that defendants did not —

"keep at all times on hand or under their control either the particular shares purchased for their customer or an equal amount of other shares of the same kind, and have them in such a situation that the customer, on paying the amount due him thereon, could at any time obtain them." Taussig v. Hart, 58 N. Y. 425, 429; Helm v. Ennis, 109 App. Div. 42, 44, 95 N. Y. Supp. 1040; Caswell v. Putnam, 120 N. Y. 153, 24 N. E. 287; Dos Passos on Stockbrokers and Stock Exchanges, vol. 1 (2d Ed.) p. 257.

The fact, if it be true, that defendants had plaintiff's stock or its equivalent in Toronto or Salt Lake City does not satisfy this requirement.

Plaintiff appeals only from so much of the judgment as sustains defendants' counterclaim.