(164 App. Div. 573)

DUSENBERRY et al. v. SAGAMORE DEVELOPMENT CO. et al.

(Supreme Court, Appellate Division, Second Department. November 27, 1914.)

1. EVIDENCE (§ 389*)—ORAL EVIDENCE—CORPORATE RECORDS.

Where the board of directors of a corporation voted to offer treasury stock for sale to the stockholders at par until November 1st and authorized the president to sell any of the stock remaining unsold after that date at par and thereafter adopted a resolution for the issuance of debenture bonds on condition that each stockholder would purchase an amount of the bonds equal to the amount of a note of the company indorsed by him for the purpose of retiring such notes, oral testimony that the purpose of the first resolution was to provide money to take up notes which the stockholders had given to the corporation for accommodation, and that when the stock was not sold the second resolution was passed, was not competent to show that the second resolution was a substitute for and repealed the first resolution.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1717, 1718; Dec. Dig. § 389.*]

2. CORPORATIONS (§ 316*)—DISPOSITION OF TREASURY STOCK—PURCHASE BY OFFICER.

The president of a corporation was not disqualified to purchase treasury stock which the board of directors had voted to sell.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401, 1402, 1404–1406, 1408, 1412–1414; Dec. Dig. § 316.*]

3. CORPORATIONS (§ 72*)—DISPOSITION OF TREASURY STOCK—PURCHASE BY OFFICER.

Where a resolution of the board of directors of a corporation to offer treasury stock for sale to the stockholders pro rata until November 1st, and authorizing the president thereafter to sell at par any of the stock remaining unsold, was spread upon the minutes and copies thereof sent to the stockholders, they could not complain that after the expiration of the time fixed the president purchased the stock without notice to the

other stockholders that he proposed to sell the stock, though he and those associated with him thereby acquired control of the corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 72.*]

4. CORPORATIONS (§ 189*)—STOCKHOLDERS' ACTION—GROUNDS OF ACTION—INJURY TO CORPORATION.

An action by stockholders in a corporation to set aside a sale of treasury stock, whereby the president ·of the corporation and those associated with him obtained control of the corporation, was a representative action on behalf of the corporation, and could not be maintained unless a wrong was committed against the corporation; and hence, where there was no proof of fraud, and the stockholders who thereby gained control were not conspirators, looters, or wreckers, and were contemplating nothing harmful to the corporation, the action could not be maintained, as the sale to some of the stockholders in exclusion of others was not in itself a wrong which would support such action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. § 189.*]

Appeal from Special Term, Westchester County.

Action by Charles Dusenberry, Jr., and others against the Sagamore Development Company and others. From a judgment for plaintiffs the defendant named and certain of the other defendants appeal. Reversed, and new trial granted.

See, also, 159 App. Div. 911, 144 N. Y. Supp. 1113.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

Allan R. Campbell, of New York City, for appellants.

John F. Brennan, of Yonkers, for respondents.

JENKS, P. J.   Certain residents in suburbs of the city of New York bought land to prevent the location thereon of an institution. They formed a corporation to improve the land and then to sell it from time to time for dwellings. This litigation represents internal dissension in that corporation. The corporation was capitalized at $100,-000, with 1,000 shares of stock. Of the 1,000 shares, 201 remained in the treasury. Some time after the corporation was a going concern, the defendant Leonard, who was then the president, bought for himself and for other stockholders in sympathy with him 175 shares of the stock, and paid therefor the par value thereof, $17,500. The certificate was issued to Leonard. Leonard and his adherents, with the addition of this stock, possessed $50,500 of the capital. And thus they controlled the election of the directors at the ensuing annual meeting and displaced four of the plaintiffs in the directorate by persons in accord with Leonard and his supporters. The plaintiffs have secured judgment at Special Term that the election of those directors, which required the voting of these 175 shares, was illegal and void, that the individuals who had a majority exclusive of these shares were elected, and that Leonard or his transferees must return the 175 shares to the treasury and receive from the corporation the amount paid for this stock, not exceeding its par value. The theory of this judgment is .that this purchase by Leonard was in pursuance of a secret scheme for the control of the corporation that shut

out the other stockholders from the opportunity to purchase such stock in violation of their rights, and that there was no authority from the corporation for such sale.

[1] I shall consider first the alleged illegality of the sale. There is no question that the said 201 shares in the treasury were part of the originally authorized capital stock and were issued to Leonard in due form. The authority for the sale is a resolution duly passed by the directors on October 23, 1911, and entered upon the minute book, that the balance of the authorized stock, $20,000 par value, be offered pro rata to the stockholders at par until November 1, 1911, and that the president be authorized to sell at par any of said stock remaining unsold after November 11, 1911. It is not contended that the resolution was invalid in itself, or was ever directly rescinded or modified, but the court found that a resolution passed on November 14, 1911, was intended to be "a substitute for and make unnecessary the sale of the treasury stock." Thus the theory seems to be that there was repeal of the first resolution by the second resolution. The second resolution did not, in terms, refer to the first resolution, much less attempt in so many words to repeal it or to nullify it. It simply provided that the corporation should issue and should dispose of certain 6 per cent. debenture bonds at one year in the sum of $27,000, conditional that each stockholder agree to purchase an amount at par equal to the amount of the company's note now indorsed by him, "the object of said issue being to retire said notes," without further provision for retirement at any time. There is nothing antagonistic or contrary in the two resolutions. The proposition that the second was a substitute for the first so as to make it inoperative rests upon certain oral testimony, received over objection and exception, that the purpose of the first resolution was to provide money to take up the notes which the stockholders had given to the corporation for accommodation and which had been renewed once and were coming due, and that when the stock had not been sold the second resolution was passed. This testimony was contradicted, but I shall assume that the finding of the court as to the credibility should not be disturbed. I think that such proof was incompetent, in that it could not be received to affect the formal resolution reduced to writing and entered upon the official records of the corporation. Gardiner v. Bronx National Bank, 158 App. Div. 288, 142 N. Y. Supp. 713, citing Trustees of Southampton v. Jessup, 173 N. Y. 84, 65 N. E. 949; Gould v. Norfolk Lead Co., 9 Cush. (Mass.) 338, 57 Am. Dec. 50; Lipsett v. Hassard, 158 Mich. 509, 122 N. W. 1091; Peterborough Railroad v. Wood, 61 N. H. 418; Snyder v. Lindsey, 157 N. Y. 616, 621, 52 N. E. 592. It would be a pernicious rule if the formal recorded act of a corporation could be limited, modified, or annulled by oral proof in contradiction of its terms, not directed to mistake or to fraud in the record of the resolution. Without such proof, there is in this case no support for this theory of substitution of the said second resolution for the first resolution, and therefore I think that there was corporate authority for the sale of these 175 shares of stock at the time of the purchase by Leonard.

[2] The fact that Leonard was the president of the corporation did not disqualify him as a purchaser. Titus v. Prest., etc., 61 N. Y. 237.

[3] There remains, then, in support of the judgment but the fact that the complaining stockholders were not afforded an opportunity to purchase this stock. But even opportunity was denied them in only a limited sense. For there is no dispute that the first resolution was spread upon the minutes and thus open to all. Moreover, within three days after the resolution was passed, copies thereof were sent to all of the stockholders. There is not the slightest proof to sustain the inference that any stockholder could not have applied for the stock and have purchased it up to the time of this purchase by Leonard. Thus when the plaintiffs complain of no opportunity to purchase, they mean that when, after the said November 1st named in the resolution, Leonard purchased the stock, he did so without notice to them that he proposed to sell the stock. This complaint is not of an opportunity denied, but rather of an opportunity overlooked, and the grievance does not seem to arise over a lost investment, but rather over the power of control over the corporation gained by others more vigilant.

[4] But the turning point of this case is that the plaintiffs bring a representative action, as we have held expressly in a previous appeal herein (157 App. Div. 485, 142 N. Y. Supp. 595), and the relief granted is as to a corporate act. This being so, evidence of wrong to the corporation was essential. Waters v. Waters & Co., 201 N. Y. 184, 94 N. E. 602. The sale of the stock to some of the stockholders in exclusion of others was not in itself such a wrong. Waters v. Waters & Co., supra. I fail to find any proof of such wrong. The court found that the sum paid for the stock was a fair price, and was at least the worth of the stock. There is no proof of any fraud worked or threatened. It is not pretended that the defendants are conspirators, or looters, or wreckers, or that they have done or contemplate the doing of any act harmful to the corporation. There is no proof that sustains any conclusion or supports any inference that the change in the directorate has worked any harm, or will do so, or that it is a menace to the corporation. There is no presumption that it would do so. Non constat that it is beneficial. To quote the language of Willard Bartlett, J., in Waters v. Waters & Co., supra:

"There is no finding that the issue of the Hamilton shares affected the control of the corporation in any manner injurious to its business interests or prosperity, or was otherwise harmful to the corporation in any legal sense."

The character of the action, then, is fatal to this judgment, which must be reversed, and a new trial must be granted, costs to abide the final award of costs. All concur.